**George K. AUSTIN, Jr.,**
**Plaintiff-Appellee,**

v.

**MARCO DENTAL PRODUCTS, INC.,**
**Defendant-Appellant.**

**No. 76–3749.**

United States Court of Appeals,
Ninth Circuit.

Sept. 12, 1977.

---

J. Pierre Kolisch, of Kolisch, Hartwell, Dickinson & Stuart, Portland, Or., argued, for defendant-appellant.

Kenneth S. Klarquist, of Klarquist, Sparkman, Campbell, Leigh, Hall, & Whinston, Portland, Or., argued, for plaintiff-appellee.

Before WRIGHT and KILKENNY, Circuit Judges, and HARRIS, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

This appeal raises issues concerning a patent's validity and infringement: (a) the "on sale" proscription; (b) nonobviousness; (c) combination of known elements; (d) standards for reissuance and (e) intervening rights.

Appellee, George K. Austin, Jr., alleges that appellant, Marco Dental Products, Inc. (Marco Dental), infringed Claim No. 1 in his patent [U. S. Patent No. Re 28,649] for a "dental handpiece control." His company, Adec, Inc., manufactures it under the trade name "Auto-Trol." Marco Dental sells a similar device.

Claim No. 1 describes a mechanism which automatically controls the flow of air and water to a compact dental handpiece. The device combines a dental handpiece, a control block assembly and a hanger valve assembly. In operation it permits the automatic feeding of drive air, cooling water and air, and chip air [1] without requiring the dentist to adjust for each of the three to seven handpieces he may use with a typical patient.

Central to Austin's invention is the innovative use of flexible diaphragms to regulate the flows, such as those required in high speed drills. The district court succinctly described their function:

> Behind each handpiece is a control block. When a dentist uses a handpiece, the air and water will flow into the control block, down a port to the diaphragm (which is flexed open when the handpiece is picked up), up the adjacent outlet port, out to the handpiece. When the dentist uses an adjacent handpiece, the air and water flow straight through the interceding control block and into the control block behind the handpiece being used. In this way, air and water only flow across the diaphragm of the particular control block connected to the handpiece being used.

Austin conceived his invention on a summer weekend in 1968 and by August of that year had constructed a prototype of the control block. Adec issued a wholesale price list effective September 1, 1968 giving prices of four Auto-Trol models. A newsletter of October 7, 1968 sent to Adec customers introduced the new unit and other items. The prototype was displayed at a dental convention in Miami on October 27, 1968.

The original patent application was filed on October 24, 1969 and a patent was issued in February 1972 as No. 3,638,310. Three months later Austin sued Marco Dental for infringement.

On September 27, 1974 Austin filed for a reissue of his patent because the language of claims 1 and 4 was defective. He later

---

* Of the Northern District of California.

1. Drive air operates small turbine-like motors which run the drills. Chip air blows away debris during drilling.

submitted an amendment requesting that claims 17, 18 and 19 be cancelled, based on prior art patents brought to his attention by Marco Dental. Following the patent's reissue (No. Re 28,649) in December 1975, Austin filed an amended complaint for patent infringement.

The "on sale" issue was segregated from others. The district court held a trial in February 1976 on the issue whether the Austin invention had been "on sale" more than one year prior to October 24, 1969, the filing date of the original patent application. The court held that it had not been "on sale" and denied Marco Dental's request for interlocutory certification.

The remaining issues of validity and infringement of the Austin reissue patent were tried later. Only claim 1 was at issue and the district court entered judgment for appellee after determining that the Austin patent was valid and infringed.

## I.

### "ON SALE"

The "on sale" provision, 35 U.S.C. § 102(b) states, in pertinent part:

A person shall be entitled to a patent unless—

.    .    .    .    .

(b) the invention was patented or described   .   .   .   in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

The rule of this circuit in determining whether the invention was "on sale" more than one year before the patent application was expressed in *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426 (9th Cir. 1973), where we said:

A sale or an offering for sale precludes any inquiry into the experimental nature of the sale *unless* the contract of sale or the offering for sale contains an express or clearly implied condition that the sale or offering is made primarily for experimental use.

Thus the sale or offering would not ipso facto invalidate the patent nor preclude further inquiry into the experimen-

tal nature of the use where the contract or the offer   .   .   .   showed that the device was still experimental and that no workable prototype had been made (*Americo* [sic] *Contract Plate Freezers, supra*);   .   .   . .

*Id.* at 433 (emphasis in original).

The invention must be completed before sales efforts become a bar. Appellant contends that Austin's invention, the control block was fully completed by August 1968, two months before the critical date of October 24, 1968. To support its argument Marco Dental points primarily to the Adec wholesale price list of September 1, 1968 and the October 7 Adec newsletter to its customers with its brief description of the Auto-Trol and the picture of a mock-up.

*Amerio Contact Plate Freezers, Inc. v. Belt-Ice Corp.*, 316 F.2d 459 (9th Cir. 1963), also involved drawings and a mock-up of a freezing device shown to customers prior to the critical date. We held that, unless there was in existence a fully-operative device incorporating the invention prior to the critical date, there could be no "placing of the invention on sale in the sense intended by the statute." *Id.* at 464.

Ordinarily   .   .   .   selling activity   .   .   .   prior to the time that a fully-operative article or apparatus incorporating the invention comes into existence, is not a reliable indicium of competitive exploitation. Until at least an operative prototype has been completed and tested, the competitive effectiveness of such activity, in all probability, will be impaired by the aura of continuing developmental, experimental and testing effort. Moreover, at this stage, such activity is likely to be more for the purpose of eliciting needed changes in design and testing whether the market potential warrants continuance of the project, than to launch full-fledged commercial exploitation.

*Id.* at 465.

The annual price list was mailed to Adec dealers after the conception of the invention and completion of a test model embodying the underlying principle, but before development of an operative Auto-Trol prototype.

The newsletter invited Adec customers to view the company's new products at Adec's exhibition booth at the American Dental Association convention in Miami on October 27–29, 1968. Many manufacturers including Adec previously had used dental conventions as a sounding board to elicit suggestions from practitioners for modifications and to measure possible acceptance of planned products before production and sale.

After some preliminary tests with air and water connections, a prototype was shipped to Miami about October 22, 1968. It had not been used or tested by dentists. In fact, suggestions were made at the convention for significant design changes. As a result Adec substituted a metal hinge block for a plastic one and developed a "lock-out" device which allowed the handpieces to be engaged independently.

No Auto-Trols were sold before the critical date and pre-October 24 descriptions were of an undeveloped, untested and incomplete device.[2]

An examination of the legislative history surrounding the "on sale" provisions reveals that Congress was well aware that, before an invention was considered "fully completed" and the inventor was required to file to avoid the one year bar, it must be reduced to practice.

> The first conceptions of ingenuity, like the first suggestions of science, are theories which require something of experiment and practical exemplification to perfect. Mechanical inventions are at first necessarily crude and incomplete. Time is required to develop their imperfections and to make the improvements necessary to their adaptation to practical uses.

S.Rep.No.338, 24th Cong., 1st Sess. 6 (1836). Cf. S.Rep.No.876, 76th Cong., 1st Sess. (1939); H.R.Rep.No.961, 76th Cong., 1st Sess. (1939).

We believe the district court did not err in concluding that "Austin did not engage in the 'competitive exploitation of his invention' until after the critical date."

## II.

## "NONOBVIOUSNESS"

A new patent must not only be new and useful, but it also must be nonobvious. Section 103 provides:

> A patent may not be obtained . . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains . . . . .

The crucial question is whether the invention would have been obvious to one of ordinary skill in the pertinent art. *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1270 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976).

With the addition of Section 103 as part of the 1962 Amendments to the patent laws Congress reoriented the focus of inquiry from novelty[3] to nonobviousness. Faced with interpreting the meaning of nonobviousness the Supreme Court articulated a three-pronged standard for factual inquiry in *Graham v. John Deere, Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

According to that case, a court must examine: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. *Id.* at 17, 86 S.Ct. 684. *See also Globe Linings, Inc. v. City of Corvallis*, 555 F.2d 727, 730 (9th Cir. 1977).

---

2. *Compare Kalvar Corp. v. Xidex Corp.*, 556 F.2d 966 (9th Cir. 1977), where it was held that plaintiff who sold and distributed samples of his product more than a year prior to the date of filing had acted in a commercial rather than experimental manner.

3. *See, e. g., Hotchkiss v. Greenwood*, 52 U.S. (11 How.) 248, 13 L.Ed. 683 (1851) (functional approach to invention).

■ The Court recently reemphasized that in determining nonobviousness the proper measure is not "what would be obvious to a layman, but rather what would be obvious to 'one reasonably skilled in [the applicable] art.'" *Dann v. Johnston*, 425 U.S. 219, 229, 96 S.Ct. 1393, 1398, 47 L.Ed.2d 692 (1976). The *Graham* inquiry, moreover, must be made in the light of "the problem allegedly solved by the invention and the efforts of others to arrive at a satisfactory solution." *Reeves Instrument Corp. v. Beckman Instrument, Inc.*, 444 F.2d 263, 271 (9th Cir. 1971), *cert. denied*, 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971).

■ The district court found the patent at issue nonobvious under the Graham *standard*. Its *Graham* findings are determinative on appeal unless clearly erroneous. *Saf-Gard*, 532 F.2d at 1272. Here the court examined the prior art references, weighed expert testimony, and applied the proper test to the evidence.

Appellants primarily rely on, and the district court discussed at length, three prior art references: (1) the Nielsen patent (No. 3,466,749); (2) the Davis patent (No. 2,667,-390); and (3) Williams' diaphragm valve (not patented).

As the district court noted in its opinion, the development of high speed air driven dental handpieces in the 1950's created a need for a more efficient system to control the flow of air and water to handpieces. Many control systems were developed but, before the Austin patent, none used a flexible diaphragm valve. A diaphragm valve system alone, however, was not new and had been used in unrelated industries.[4]

Marco Dental argues that the Williams valve, used in truck scales, and the Davis patent, used in water softeners, presaged the use of the diaphragm valve. The trial court found these were large and bulky compared to the Austin valve which was miniaturized and particularly well suited for dental equipment.

The district court further distinguished the Austin diaphragm valve on the basis that the Davis patent and the Williams valve do not function to close all ports as does the Austin device. Testimony at trial indicated that this feature is a significant advantage because it is more effective in preventing leaks.

Appellant argues that the Nielsen patent demonstrates all elements of claim 1 except for the use of a diaphragm valve.[5] The district court found, however, that the Nielsen patent also did not have a hanger for the handpiece which moved vertically to control the operation of a hanger valve.

Whether the differences cited rise to the level of patentability depends upon the level of ordinary skill in the pertinent art. Such a determination must follow an analysis of the problems purportedly solved by the invention and the efforts of others to arrive at satisfactory solutions.

The record shows that until 1940 drill speed was relatively slow and heat generation was not serious. In the early 1950's, however, dental handpieces were developed with an air turbine device which increased the speed and generated more heat. Many manufacturers developed dental handpiece control systems using a variety of valves.

Generally the valves were large, required several moving parts and often malfunctioned. Abundant evidence exists in the record from which the district court could find that the Austin invention would not have been obvious to a researcher in the dental field in 1968. The invention was a significant step forward in the art of dental equipment.

Marco Dental's expert witness, Fishwood, testified that the use of flexible diaphragm

4. In a preliminary amendment dated March 7, 1975, Austin requested cancellation of claims 17, 18 and 19 because prior patents disclosing fluid flow control devices utilizing diaphragms made them invalid for broadness. He maintained that claim 1 remained valid because of the arrangement of passages and ports in the control block.

5. Austin conceded at the outset of trial that claims 7, 8 and 9 were invalid on the basis of the Nielsen patent, which disclosed a plurality of control blocks.

valves was well developed and that persons of ordinary skill in valve design knew diaphragm valves could be substituted for spool, poppet and other types of valves. He concluded that the use of such a valve would have been apparent to an ordinary designer of dental equipment.

Fishwood's conclusion, however, is seriously undermined by the testimony of others. Fishwood's company developed the Williams valve and engaged in the manufacture of dental equipment and other industrial items. Its efforts over many years to develop an effective and efficient dental handpiece control were unsuccessful. A diaphragm valve, which has since become standard in the industry, was never utilized or developed by persons of "extraordinary skill" in the dental equipment field.

■ The district court's conclusion that the Austin patent was nonobvious is supported by the evidence and is not clearly erroneous as a matter of law.

## III.

## COMBINATION

■ The district court found that the Austin diaphragm valve was different in structure and function from that of the prior art references, specifically the Davis patent and the Williams valve, and thus was a new element. No finding of "unusual or surprising results" is required unless the patent merely combines old elements. *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); *Kamei-Autokomfort v. Eurasian Automotive Products,* 553 F.2d 603 (9th Cir. 1977).

Our review demonstrates that the Austin patent was more than just an improved product. It was an innovatively different one. *See Kamei-Autokomfort, supra.* The substitution of a diaphragm valve in combination with a hanger valve assembly was not readily obvious to a person of ordinary skill in the field.

Miniaturization of the control block was realized, and its simplicity markedly reduced manufacturing and maintenance

costs. Moreover, while secondary considerations are not conclusive, *Kamei-Autokomfort, supra,* circumstantial factors such as the resolution of a thorny problem in the dental field and the device's subsequent widespread use as a control mechanism buttress the conclusion of nonobviousness. *See Saf-Gard Products, Inc., supra.*

## IV.

## REISSUE

■ Marco Dental contends that the Austin patent was illegally reissued because, although Austin submitted an oath to support the reapplication for reissue, he did not submit one to support the cancellation of claims 17, 18 and 19 in his amendment.

The district court found no merit in this contention and we agree. The statute, 35 U.S.C. § 251, requires that the provisions relating to applications for patents shall be applicable to applications for reissue. An oath by the inventor is required by 35 U.S.C. § 115 and Austin complied. Amendments not constituting new matter do not require the supplemental oath of the inventor. *See, e. g. , Aerosol Research Co. v. Scovill Manufacturing Co.,* 334 F.2d 751 (7th Cir. 1964). The amendment in question did not constitute new matter but rather eliminated old matter, claims which Austin believed had been described too broadly and, therefore, relied on prior art.

## V.

## INFRINGEMENT

■ Marco Dental concedes its product has all elements recited in claim 1 of the Austin patent except for a drive air passage and a cooling air passage extending "therethrough." Given our determination that the patent is valid the question of infringement hinges on the meaning of the word "therethrough" as used in claim 1.

Appellant argues the term refers to a straight passage through each control block by which fluid or air passes from one block

to another. It contends this reading is compelled because the Austin invention always contemplated multiple blocks instead of one and such passages serve no purpose unless multiple block units are used.

Austin asserts that "therethrough" refers to the "circuitous" passage which leads from one port to and from the diaphragm to another port. The appellant's device also has a "circuitous" passage leading to and from the diaphragm but has none carrying air and fluid directly from one control block to another. In Marco Dental's product, air and water are delivered by a manifold block to an individual control block and do not pass from one block to an adjacent one as in the Austin invention.

The district court held that "therethrough" referred to the indirect or "circuitous" passage for air or fluid through the control block, to and from the diaphragm, and out to the handpiece. The court stressed that Marco Dental's interpretation ignores the language in claim 1 that the drive air passage and cooling fluid passage each have a "pair of ports intermediate [to] the inlet and outlet . . . opening into . . . the diaphragm chambers. . ." [C.T. 40].

We believe the court's determination was not clearly erroneous and claim 1 of the Austin patent was infringed.

## V.

### INTERVENING RIGHTS

 The patent law, 35 U.S.C. § 252, provides for intervening rights of a manufacturer who does not infringe a valid claim of the reissued patent which was in the original patent. It also states that reissuance neither affects any pending action nor abates any cause of action existing to the extent that the claims of the original and reissued patents are identical.

Appellant avers that claim 1 in the reissued patent is substantially different from the original claim and therefore it had acquired intervening rights. The district court concluded that the modification of claim 1 was to clarify and make more precise the language used without substantive changes in the claims. The doctrine of intervening rights is inapplicable where claims of a reissue patent are substantially identical to those of the original patent. *See, e. g., Akron Brass Co. v. Elkhart Brass Mfr. Co.,* 353 F.2d 704 (7th Cir. 1965). Appellant's arguments to the contrary are unpersuasive.

AFFIRMED.