**OMARK INDUSTRIES, INC., Plaintiff,**

v.

**The CARLTON COMPANY and Raymond R. Carlton, Defendants.**

Civ. No. 75–1157.

United States District Court,
D. Oregon.

Aug. 11, 1978.

Kenneth S. Klarquist, James Campbell, Klarquist, Sparkman, Campbell, Leigh, Hall & Whinston, Portland, Or., for plaintiff.

M. H. Hartwell, Jr., Kolisch, Hartwell, Dickinson & Stuart, Portland, Or., for defendants.

## OPINION

SOLOMON, District Judge:

Omark Industries, Inc. (plaintiff) filed this action against Raymond Carlton (Carlton) and the Carlton Company (defendants) to enjoin them from infringing plaintiff's saw chain patent (U.S. Letters Patent No. 3,180,378 or the Omark patent). Defendants deny infringement. They also seek a declaration that the Omark patent is invalid because of obviousness and because the invention was on sale or in public use more than one year before the patent application. Defendants also assert that the patent is invalid because plaintiff failed to submit to the Patent Office a copy of an agreement connected with plaintiff's settlement of an interference proceeding with a rival patentee.

I hold that defendants do not infringe and that the Omark patent is invalid.

Plaintiff designs, manufactures and sells chains for motorized saws. From 1948 through 1963, defendant Carlton worked for plaintiff as an engineer and later as a sales manager. Before 1955, Carlton learned that loggers need a saw chain which can cut through brush and small limbs without causing the saw to jerk and without causing the chain to jam and break.

Carlton designed a brush cutting chain which plaintiff first tested in 1957. In May 1959, after market testing, he applied for a patent on his invention and assigned his rights to plaintiff.

In 1963, during the time the Patent Office was reviewing the application, Carlton left plaintiff and opened his own saw chain business. Since 1965, the business has been operated as the Carlton Company.

From 1959 through 1964, the Patent Examiner rejected several claims and required plaintiff to amend others. In April 1965, the Patent Office issued plaintiff a patent (U.S. Letters Patent No. 3,180,378) after a rival patentee, Consoletti, conceded the priority of plaintiff's invention.

After the patent issued, plaintiff learned of the defendants' product, the SS Safety Chain.

### I. The Invention

The innovation of the Omark patent was the bumper link (18 in Figures A, B and C) which rises in front of the leading edge (30 in Figure A) of the depth gauge (28 in Figure A). Without the bumper link, the chain was the typical chain used to cut brush at the time of the invention.

In the original patent application, Carlton explained that the leading edge of the depth gauge sometimes strikes a branch which falls between the cutter links regardless of the speed at which the chain revolves around the saw. When the full leading edge of the depth gauge strikes a branch, the chain will either jam and cause the saw to jerk or the chain itself will break.

Another method conceived by Carlton to prevent what is called a "hooked engagement" of the leading edge of the depth

gauge is to make the bumper link slope towards the rear and thereby guide branches over the leading edge of the depth gauge (Figures B and C).

## II. *The Validity of the Omark Patent*

### 1. *Obviousness*

■ Defendants seek a declaration that the Omark patent is invalid for obviousness. 35 U.S.C. § 103.

Defendants must overcome the statutory presumption that a patent is valid. 35 U.S.C. § 282; *Santa Fe-Pomeroy Inc. v. P & Z Co., Inc.,* 569 F.2d 1084, 1091 (9th Cir. 1978).

Defendants have an additional burden here because Carlton was the inventor and he now seeks to invalidate the patent on his own invention. To obtain the patent he swore that he believed his invention was patentable, but at the trial he testified that the prior art made the invention obvious to a person of ordinary skill in the art.

■ In determining obviousness, a court must examine: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Austin v. Marco Dental Products, Inc.,* 560 F.2d 966, 970 (9th Cir. 1977).

■ Carlton reduced his invention to practice in April 1957 when plaintiff conducted successful field tests.

Defendants cite the following patents as prior art:

| | |
|---|---|
| Donley | No. 2,826,226 |
| Bernard et al. | No. 2,788,811 |
| Mall | No. 2,446,774 |
| Merz | No. 2,632,484 |
| Cox | No. 2,508,784 |

Applications for them were all filed before April 1957. They are therefore proper references. *Sutter Products Co. v. Pettibone Mulliken Corp.,* 428 F.2d 63, 645–646 (7th Cir. 1970); *In re Bass,* 474 F.2d 1276 (CCPA 1973). Defendants also cite plaintiff's own unpatented Brady Tree Girdler.

None of them deals with the subject of the patent in suit.

Donley and the Brady Tree Girdler are close, but Donley claimed a saw chain with a bumper link used as an auxiliary depth gauge to prevent the cutting element from cutting too deeply into the wood as the chain rounded the nose of the saw bar (Figure D). Like Donley, the Brady Tree Girdler, a hand operated saw, used a bumper link to keep the cutting element from cutting too deeply.

The bumper link in the patent in suit permitted an otherwise standard chain to be used without the danger of hooked engagement.

■ Here what appeared to be a minor change was actually a great step forward because it resulted in a "beneficial coaction" of known elements and achieved results not contemplated by the prior art. *Santa Fe-Pomeroy, Inc. v. P & Z Co., Inc., supra,* 569 F.2d at 1095. The invention solved the problem loggers were encountering in cutting brush with a standard chain and in my view rose to the level of patentability.

Secondary considerations, such as commercial success and prior unsuccessful attempts to solve the problem, are also helpful in determining the ordinary level of skill in the art. *Austin v. Marco Dental Products, Inc., supra,* 560 F.2d at 972.

By Carlton's own testimony, there was a long felt need for a chain that could cut brush smoothly. The patented chain, or a chain based on that design, is a huge commercial success.

Defendants point out that other inventors, particularly Consoletti, designed similar safety chains at about the time Carlton made his invention.

In an interference proceeding before the Patent Office, Consoletti conceded that Carlton was the first to make the invention. The Patent Office therefore awarded his patent application priority, even though Consoletti filed his application before Carlton.

The Consoletti patent further demonstrates that Carlton's invention was not obvious. Consoletti did not make his invention until nearly a year after Carlton conducted successful field tests. Consoletti thought the principle discovered by Carlton was novel and patentable. Consoletti referred in his patent to the prevalent belief in 1958 that the speed of a chainsaw ruled out the depth gauge as the cause of the jerky operation of the saw.

Plaintiff's patent is not invalid because of obviousness.

### 2. Failure to Record an Agreement with the Patent Office

Defendants contend that the patent in suit is invalid because plaintiff, in violation of 35 U.S.C. § 135(c), failed to record with the Patent Office an agreement made to terminate an interference proceeding.

By a 1956 agreement, plaintiff was given the right of first refusal to buy Draper Corporation (Draper). Draper became the owner of the Consoletti patent (U.S. Letters Patent No. 2,930,417), which was applied for in February 1958 and issued in March 1960.

In September 1961, the Patent Office declared an interference between the Consoletti patent and plaintiff's patent application. In the interference proceeding, Carlton, then employed by plaintiff, insisted that he conceived and reduced to practice his invention before Consoletti even though Consoletti filed first. Carlton therefore asked for a judgment of priority.

In August 1963, during the interference proceeding, Draper notified plaintiff, as required by the 1956 agreement, that Draper had received a bona fide offer of $380,000 for its business, including its patents. In September 1963, plaintiff elected to buy Draper's assets, including its patents. Immediately thereafter, plaintiff notified the Patent Office of this agreement. Plaintiff also stated that it would determine whether the Consoletti patent or its patent application was entitled to priority and make an election accordingly.

In November 1963, Draper executed the assignment of its patents to plaintiff, and one month later plaintiff filed a copy of this assignment with the Patent Office. Another copy of the assignment was filed when Consoletti conceded plaintiff's priority of invention based on documentary evidence.

Section 135(c) was designed to prevent an applicant from obtaining a patent monopoly by a private settlement hostile to the public interest. *Moog, Inc. v. Pegasus Laboratories, Inc.*, 521 F.2d 501, 505 (6th Cir. 1975). Here, plaintiff complied with the statute by filing a copy of the assignment with the Patent Office. In this case, the assignment disclosed everything that was relevant.

There is no merit to defendants' contention that plaintiff, in addition to the assignment, was required to file the agreement to make the assignment.

### 3. File Wrapper Estoppel

Defendants contend that plaintiff made representations to the Patent Examiner which require a narrow reading of claims 4, 6, 7 and 9 of its patent.

Defendants deny infringement. They assert that the bumper link and the depth gauge on their SS Safety Chain (a and b respectively in Figure E) have a difference in height which is practically identical to the difference in height of the bumper link and the depth gauge on the Donley patented chain (c and d respectively in Figure F).

Defendants assert that all of plaintiff's patent claims require the bumper link and the guard link to be "substantially coextensive" in height. They further assert that the words "substantially coextensive" must be given a narrow reading because plaintiff itself inserted these words to distinguish the Donley patent whose bumper link and depth gauge are visibly different in height. Actually, the height difference in Donley is practically identical to the height difference on defendants' SS Safety Chain.[1]

1. There was only a .003″ difference between the height separation of the bumper link and

the depth gauge on the Donley and on the SS Safety Chain.

During the prosecution of plaintiff's patent application, the Patent Examiner asked plaintiff to distinguish its claims from the Donley patent. Plaintiff in one claim had described the bumper link as "extending in the same direction as said depth gauge for preventing hooked engagement." In September 1964, plaintiff filed an amendment to this claim. The amended claim described the bumper link as "extending in the same direction as said depth gauge a distance substantially coextensive with said depth gauge." Plaintiff added other claims which described the relative heights of the bumper link and depth gauge as "substantially coextensive".

After the Patent Examiner repeatedly expressed his belief that the bumper link on Donley served the same function as the bumper link on plaintiff's patent, plaintiff's counsel made the following statement:

".  .  . the distance which the auxiliary depth gauge extends outwardly from the chain of Donley is much less than the distance of the cutter depth gauge."

Plaintiff's counsel made this statement after plaintiff's field tests showed that its chain worked better when the depth gauge and bumper link were not coextensive.

Loggers, when they sharpen their chains, often forget to sharpen the bumper links, so that after a few sharpenings the bumper links begin to interfere with cutting.

Plaintiff, to satisfy the Patent Examiner, intentionally gave up the broad patent claims which it now asserts.

Plaintiff stresses that it did this only because the Patent Examiner failed to understand other distinguishing features of the Donley patent.

Plaintiff should not have acquiesced in the Patent Examiner's belief—which plaintiff contends is a mistaken belief—that the Donley patent's curved depth gauge did not fend off branches. A patent applicant must appeal its case within the Patent Office rather than agree under protest to a narrow construction of its claims by the Patent Examiner. *D & H Electric Co. v. M. Stephens Manufacturing Co., Inc.*, 233 F.2d 879, 884 (9th Cir. 1956) (file wrapper barred assertion that "substantially at right angles" in patent included device with 89° angle); *Capri Jewelry Inc. v. Hattie Carnegie Jewelry Enterprises, Ltd.*, 539 F.2d 846, 851–852 (2nd Cir. 1976), cert. denied, —— U.S. ——; 4 Deller's Walker on Patents § 234 at 87–89 (2nd ed. 1965).

I find that the heights of the bumper link and depth gauge of the accused device are not "substantially coextensive". I further find that the accused device does not infringe plaintiff's patent, particularly when the claims are read narrowly, as they must be read under the doctrine of file wrapper estoppel.

### 4. Inducement to Infringe

Plaintiff seeks to circumvent the estoppel defense by contending that defendants induce infringement in violation of 35 U.S.C. § 271(b), which provides:

"Whoever actively induces infringement of a patent shall be liable as an infringer."

To be liable under 35 U.S.C. § 271(b), a person must induce, aid or contribute to infringement. *Self v. Fisher Controls Company, Inc.*, 566 F.2d 62 (9th Cir. 1977). The manufacture of an article which as a result of wear becomes identical with the patented article does not necessarily constitute infringement. *Elyria Nat. Rubber Heel Co. v. I.T.S. Rubber Co.*, 263 F. 979, 981–982 (6th Cir. 1920).

Defendants market a sharpener for their SS Safety Chain. It is called the File-O-Plate, and its instructions direct the user to file the depth gauge when filing the cutting element. The instructions are silent on whether to lower the bumper link. If the bumper links are not lowered, after a number of filings the bumper link and the depth gauge tend to become coextensive.

Plaintiff's 1957 field tests of its own patented chain show that loggers, when they are not supplied with instructions, usually do not touch the bumper link. Therefore, the links on the SS Safety Chain as well as

on plaintiff's brush-cutting chain tend to become coextensive after use with or without the File-O-Plate instructions.

I hold that plaintiff failed to establish a violation of 35 U.S.C. § 271(b).

### 5. *Public Use or Sale*

Defendants contend that the patent in suit is invalid because the invention was on sale or in public use more than one year before May 8, 1959, the date of the patent application. 35 U.S.C. § 102(b).

Plaintiff tested the invention several times in 1957. The tests were successful.

In January 1958, Carlton, then employed as chief engineer of plaintiff, suggested that the chain be put in plaintiff's product line and urged the sales department to begin to advertise it.

In February 1958, the sales department was ordered to do a market analysis of the chain. Limited quantities of the chain were sent to dealers and distributors in the Northwest and Midwest to learn whether the chain was marketable. Customers were asked to give the chain a thorough test, but no detailed records of chain performance or customer reaction were kept. No conditions of secrecy were imposed on customers who received the sample chains. Some chains were returned. Many were not. No attempt was made to retrieve them. Much of this activity occurred before the critical date, May 8, 1958.

In late February 1959, in a letter to plaintiff's patent counsel, Carlton stated that he believed that the market testing which started more than a year before, prevented plaintiff from obtaining a patent. But plaintiff's sales manager assured Carlton that most of the chains were given away as "test" chains, and he concluded: "The relatively small amount that was sold I think we could forget."

Once the evidence shows a public use or sale prior to the critical date, the plaintiff must establish by convincing evidence that the purpose of the activity was solely experimental in nature. *Kalvar Corp. v. Xidex Corp.*, 384 F.Supp. 1126, 1135 (N.D.Cal. 1973), *affirmed*, 556 F.2d 966 (9th Cir. 1977). Plaintiff's sales department sold or gave away samples of a developed product, primarily to determine whether it could be marketed profitably. Plaintiff's activity was typical of " 'a trader's, and not an inventor's, experiment.' " *Cataphote Corp. v. De Soto Chemical Coatings, Inc.*, 356 F.2d 24, 27 (9th Cir. 1966); *The Robbins Co. v. Lawrence Manufacturing Co.*, 482 F.2d 426 (9th Cir. 1973).

I hold that plaintiff's patent is invalid because the invention was on sale and in public use more than one year before the patent application.

I also hold that even if the patent were valid, the infringement action is barred under the rule of file wrapper estoppel.

Defendants' application for attorneys' fees is denied.

This opinion shall constitute findings of fact and conclusions of law under Fed.R. Civ.P. 52(a).

Counsel for defendants shall submit a judgment in accordance with this opinion.

APPENDIX

FIGURE A

## FIGURE B

## FIGURE C

## FIGURE D

## FIGURE E (SS Safety Chain)

FIGURE F (the Donley Patent)