STASH, INC.

v.

PALMGARD INTERNATIONAL, INC.

Civil No. K–95–2006.

United States District Court, D. Maryland.

Aug. 30, 1996.

Jeffrey Auerbach, and Howrey & Simon, Baltimore, Maryland, and Eugene E. Renz, Jr., Media, Pennsylvania, for plaintiff and counter-defendants.

JoAnne S. Redmann, Joppa, Maryland, for defendant and counter-plaintiff.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiff Stash, Inc. ("Stash") instituted this case, seeking a declaratory judgment that certain protective athletic gloves which Stash distributes do not infringe the earlier issued Webster patent. The Webster patent, which is apparently assigned to defendant Palmgard International, Inc. ("Palmgard"), covers an inner baseball glove. Stash also seeks a declaratory judgment that certain claims of the Webster patent are invalid. Palmgard has filed a counter-claim of infringement against Stash and against Carol A.J. Stanley ("Stanley"), a corporate officer of Stash and the original holder of the Stanley patent. That patent, which covers protective athletic gloves, was issued prior to the Webster patent and is assigned to Stash. This Court's jurisdiction in this case is based on federal question jurisdiction over each and all of the said patent issues, in accordance with 28 U.S.C. § 1331, and on the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

Stash and Stanley moved for summary judgment on April 15, 1996 regarding all open patent issues. On August 14, 1996, with leave of this Court and without objection from Stash and Stanley, Palmgard filed a cross-motion against Stash and Stanley for summary judgment regarding infringement. Having considered all motions and filings related thereto, this Court will grant summary judgment to Stash and Stanley regarding their denial of infringement, deny Palmgard's motion with respect to that issue, and deny the motions of Stash and Stanley regarding invalidity. In sum, therefore, Stash and Stanley prevail.

## I. Fact

The facts of this case are essentially undisputed except in two instances which will be discussed *infra*. This case turns on interpretation of the Webster and Stanley patents. Ms. Stanley, together with one Ms. Miller,[1] filed a patent application with the Patent and Trademark Office (PTO) for an open-fingered protective athletic glove on January 4, 1984. The PTO issued that patent on December 31, 1995. Figure A shows the alternate embodiment of the Stanley invention, an open-fingered glove with a single pad of shock absorbent material extending across the upper portion of the palm and up the second finger.[2] Additional padding is also provided on the thumb.

Mr. Webster submitted his patent application for "an improved protective inner athletic glove designed for wear inside a larger baseball or softball glove"[3] to the PTO on April 3, 1987 and it was issued on June 7, 1988. Figure B shows one embodiment of the Webster invention.[4] That embodiment is a closed-fingered glove[5] with padding in the "critical areas to be protected during catch-

---

1. Ms. Miller is not a party to this case and seemingly has no interest in any of the patents at issue in this case.

2. Figure A is Figure 4 of the Stanley patent. *See* Stash and Stanley's summary judgment motion, Ex. D "Stanley patent."

3. *Id.*, Ex. 1 "Webster patent" at col. 1.

4. Figure B is Figure 1 of the Webster patent. *See id.*

5. Stash and Stanley assert that it is not clear from the Webster patent whether the Webster invention is an open- or closed-fingered glove. However, it appears that the padding configuration shown in Figure B would only work with a closed-fingered glove. Furthermore, that the Webster patent covers a closed-fingered glove is seemingly apparent from Figure 5 of that patent. *Id.*

ing"[6]: the inside of all five fingers and the upper palm. Webster's initial patent application was rejected. After initial rejection and upon reconsideration, the patent examiner stated that "a claim would be deemed allowable if applicant would claim the exact location (i.e. points of coverage) of the padding and stress the advantages of sensory perception, flexibility, and protection that this coverage affords."[7] Webster responded that the padding in gloves made according to previous patents covered the control points (finger tips) and flex points (creases) of the hand, thereby decreasing flexibility and sensory perception. Webster stated that his invention solved those problems by providing padding only in maximum stress areas while leaving finger tips and crease areas unencumbered for continued ball control during glove use.

Palmgard initially asserted that a certain full- or closed-fingered glove manufactured by Champion for Stash infringed the Webster patent. The parties, however, have now stipulated that Stash no longer sells that Champion glove, but does sell a glove which is substantially identical to it. The padding configuration in those Stash gloves is similar to the padding configuration indicated in the Stanley patent. Palmgard contends that those Stash closed-fingered gloves infringe the Webster patent; Stash denies that contention by Palmgard.

## II. Summary judgment standard

■ Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. Material facts are those facts which the substantive law identifies as "facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A

dispute concerning material facts is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

■ "A defendant moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law.... Once a defendant makes the necessary showing, the plaintiff must go forward and produce evidentiary facts to support his contention." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). *See also* Fed.R.Civ.P. 56(e); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed.Cir.1984) ("Summary judgment is as appropriate in a patent case as in any other."). In addition, the nonmovant is entitled to have all reasonable inferences drawn in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

## III. Infringement

■ An accused device infringes a patent claim if the device embodies every limitation of the claim, either literally or by a substantial equivalent. *The Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821–22 (Fed.Cir. 1992). The burden of proof regarding infringement is generally on the holder of the patent, who must prove infringement by a preponderance of the evidence. *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1578 (Fed.Cir.1993). It would appear that Palmgard bears the burden of proof on that issue even though Stash, one of the alleged infringers, initiated the within suit as a declaratory judgment action. *See National Business Systems, Inc. v. AM International, Inc.*, 546 F.Supp. 340, 349, 356–57, 360–61 (N.D.Ill.1982), *aff'd*, 743 F.2d 1227 (7th Cir.1984), *cert. denied*, 471 U.S. 1110, 105 S.Ct. 2345, 85 L.Ed.2d 861 (1985) (placing burden of proof regarding infringement on defendant in a declaratory judgment action).[8]

---

**6.** *Id.*, at cols. 2–3.

**7.** *Id.*, Ex. G "Examiner Interview Summary Record."

**8.** As the Eighth Circuit explained, in the context of a declaratory judgment action:

[t]he question as to whether the burden of proof in its primary sense rests upon the plaintiff or defendant is ordinarily to be determined by ascertaining from the pleadings which of the parties without evidence would be compelled to submit to an adverse judgment before

## A. Literal Infringement

Stash and Stanley contend that the Stash glove does not infringe the Webster patent because unlike the invention described in the earlier Webster patent,[9] the Stash product has padding on the inner tip of the second finger and across the crease between the upper palm and that finger ("the palmar crease"). Palmgard contends that a genuine dispute of material fact exists concerning the padding on the index finger. Specifically, Palmgard appears to make two related factual-type arguments: first, that the padding in the Stash product covers only a portion of the inner tip of the index finger; and second, that the Webster patent covers gloves which have padding which does not extend to the entire inner and outer tip of at least one of the fingers.[10]

■ The resolution of the latter contention requires interpretation of claim 1 of the Webster patent.[11] Claim interpretation is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed.Cir.1995), *aff'd,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). To construe claims, a court should consider "the claims, the specification, and the prosecution history." *Id.* (quoting *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1561 (Fed.Cir.1991)). The trier of fact then determines whether the claims, as construed by the court, cover the accused device. *Id.* at 976.

■ Claim 1 of the Webster patent describes an inner glove with padding "covering portions of the palm and inner digits of said inner glove, ... without covering said ... inner tips of the digits."[12] The prosecution history of that patent indicates that the padding would not cover any portion of the inner tips of the fingers in order to achieve the sensory perception in the fingertips that Webster claimed was an improvement of his invention over the prior art. Thus, Palmgard was apparently disclaiming coverage on the end-most inner finger tips, since it is that portion of the finger in which sensory perception is necessary for ball control. Palm-

---

the introduction of any evidence. It is a fundamental rule that the burden of proof in its primary sense rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue and it remains there until the termination of the action. It is generally upon the party who will be defeated if no evidence relating to the issue is given on either side.
*American Eagle Ins. Co. v. Thompson,* 85 F.3d 327, 331 (8th Cir.1996) (quoting *Reliance Life Insurance, Co. v. Burgess,* 112 F.2d 234, 237–38 (8th Cir.), *cert. denied,* 311 U.S. 699, 61 S.Ct. 137, 85 L.Ed. 453 (1940)). *But see Sanchez-Martinez v. I.N.S.,* 714 F.2d 72, 74 n. 1 (9th Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984) (explaining that in proceedings regarding citizenship, the initial burden of proof is on the citizen when he or she brings a declaratory judgment action in district court, but on the government in proceedings before the INS). Here, it would appear that Palmgard is asserting the affirmative, specifically that Stash is infringing the Webster patent. If no evidence relating to infringement is offered, Palmgard would be defeated on that claim. For that reason, in this declaratory judgment action, the burden of proof regarding infringement is on Palmgard. The appropriateness of this allocation of the burden of proof is further indicated in this case by Palmgard's counterclaim regarding infringement.

9. Palmgard contends that Stash did not begin making the accused Stash product until after the Webster patent was issued. Stash and Stanley

deny that contention. While Stash and Stanley have produced evidence that Stash sold certain gloves before the Webster patent was issued, the record does not clearly indicate that the gloves so sold were examples of the accused Stash glove. This Court will construe that fact against Stash and Stanley, to whom it will award summary judgment, and therefore assumes that the accused Stash product was not sold before the Webster patent was issued.

10. Webster, in line with Palmgard, asserts that the padding of the index finger of the Stash product "covers only the underside of each finger and does not extend to, or cover the tip of any finger. Thus, the wearer of the accused Stash glove retains tactile sensations at the tip of every finger." Palmgard's April 29, 1996 opposition, Exhibit 1, Aff. of Webster at ¶ 5.

11. Claim 1 is the sole independent claim of the Webster patent. This Court need consider only whether Stash and Stanley have infringed claim 1 of that patent because "[o]ne who does not infringe an independent claim cannot infringe a claim dependent upon (and thus containing all the limitations of) that claim. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1552 n. 9 (Fed.Cir.1989).

12. Stash and Stanley's motion for summary judgment, Ex. A "Webster Patent" at col. 4.

gard explains that Webster's statements during the prosecution history were meant to distinguish the Webster invention from prior inventions in which the padding covered the entire inner and outer tip of the fingers. Nevertheless, Webster expressly stated that the padding in his invention would not cover the *inner* tips of the digits. For that reason, this Court interprets claim 1 to extend only to gloves in connection with which the padding does not cover the inner tips of the digits. A glove in which the padding covers the inner tip of at least one digit, but does not extend to the outer tip, would therefore not infringe the Webster patent. In other words, claim 1 does not cover gloves in which the padding on the inner tips would interfere with sensory perception at that point, regardless of whether such padding also extends over the end of the finger to the outer tip.

Plaintiff also contends that the padding of the Stash glove does not cover even the entire inner tip of the index finger and that the glove therefore infringes the Webster patent insofar as the padding on the fingers is concerned. That argument is contradicted by the Stash product itself, whose padding clearly extends to the seam of the glove at the end of the index finger.[13] Under those circumstances, a genuine dispute regarding the extent of the padding on that finger does not exist because Palmgard has presented no evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For that reason, the Stash device does not appear literally to infringe the Webster patent in so far as the padding on the index finger is concerned.

### B. Infringement under the Doctrine of Equivalents

█ In addition, the Stash product does not infringe the Webster patent because it,

unlike the Webster invention, has padding that covers the palmar crease. Palmgard does not dispute that the padding of the Stash glove extends over that crease. Palmgard argues, however, that the padding used in the Stash product easily breaks down and allows flexibility at the palmar crease. Palmgard contends that once that breakdown occurs, the Stash product works in substantially the same way and accomplishes substantially the same result as the Webster invention. Therefore, according to Palmgard, the Stash product infringes the Webster patent under the doctrine of equivalents. *See Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) (" 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.' ") (quoting *Union Paper–Bag Machine Co. v. Murphy*, 97 U.S. 120, 24 L.Ed. 935 (1877)).

Little case law regarding Palmgard's said breakdown theory exists. *Elyria National Rubber Heel Co. v. I.T.S. Rubber Co.*, 263 F. 979 (1920), considered a similar argument and involved a heel attachment to a shoe, known as a lift. The plaintiff in *Elyria* alleged that the defendant's invention infringed the plaintiff's patent because the lower surface of it wore down with use and became identical to the patented lift. The Sixth Circuit concluded that contributory infringement did not extend to that case in which "the infringing form is gradually developed by ordinary use" and therefore reversed its earlier preliminary order granting plaintiff a preliminary injunction. *Id.* at 981–82. The Court reasoned that such an extension of the doctrine of contributory infringement would be unworkable because some lifts would be worn down and infringe, while others, on shoes seldom worn, might never infringe.[14]

---

13. The accused product is attached to Stash and Stanley's April 15, 1996 motion for summary judgment as Exhibit B.

14. *Elyria* involves the doctrine of contributory infringement. In 1952, that doctrine was codified at 35 U.S.C. § 271(c) as follows:

Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

In *Cadwell v. Firestone Tire & Rubber Co.*, 13 F.2d 483, 487 (E.D.N.Y.1926), *aff'd*, 23 F.2d 1000 (1928), plaintiff, who had patented a tire with an unbroken tread surface, argued that defendant, who sold a tire with a tread surface containing recesses, infringed plaintiff's patent because, with use, the tread surface on the defendants' tires became smooth. Relying on *Elyria*, the court rejected plaintiff's argument. The court also noted that defendant did not intend the user of his tire to wear the tread down so that it was smooth. Instead, such smoothness would be a warning to the user that it was time to replace the tire. *See also Omark Industries, Inc. v. The Carlton Company, et al.*, 458 F.Supp. 449, 453 (D.Or.1978), *aff'd*, 652 F.2d 783 (1980) ("manufacture of an article which as a result of wear becomes identical with the patented article does not necessarily constitute infringement").

The cases discussed immediately *supra* suggest that where the alleged infringement is not the intended use or where it occurs, if at all, only over a period of some time, such action does not constitute infringement. The situation in this case may be different. If a purchaser of the Stash glove would almost certainly use the glove in such a way as to cause the padding to become flexible, Stash might be liable for infringement. Stash asserts that such wearing away of the padding, if any, would only occur after repeated use. Palmgard's position, as indicated by oral argument during one or more telephone conferences in this case, is that a purchaser would be expected to take action to make the glove more flexible. Palmgard has provided an affidavit in which Mr. Webster states: "In use, th[e] padding [in the accused Stash glove] quickly breaks down at the crease line to such a degree that the glove provides flexibility at the crease line as though no padding were ever present at the crease line."[15] In addition, this case involves a glove to be used inside a baseball mitt. Such mitts are commonly "broken in" by purchasers and made more flexible before use in a game. Reasonable inferences from those facts suggest to this Court, at the summary judgment stage of these proceedings, that the padding in the Stash product may break down in such a way that, insofar as the padding over the palmar crease is concerned, it infringes Webster's patent under the doctrine of equivalents.

■ However, that doctrine is limited by the prior art. "[A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims.... Since prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim." *Wilson Sporting Goods v. David Geoffrey & Assoc.*, 904 F.2d 677, 684 (Fed. Cir.), *cert. denied*, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). "[W]hether an asserted range of equivalents would cover what is already in the public domain" is an issue of law and "[t]he burden is on [the patentee] to prove that the range of equivalents which it seeks would not ensnare the prior art [invention]." *Id.* at 683, 685.

■ The first step in this analysis is to visualize a hypothetical claim, similar to claim 1 of the Webster patent, but sufficient in scope to literally cover the Stash product. The second step is to determine whether that hypothetical claim could have been allowed by the PTO over the prior art. *Id.* at 684. Here, a hypothetical claim literally covering the Stash product would cover a closed-fingered glove with padding over the palmar crease which was intended to be used within

---

Palmgard analyzes its breakdown theory under the doctrine of equivalents. It appears to this Court that such analysis is correct under the circumstances of the within case which differs somewhat from *Elyria*. In *Elyria*, the plaintiff asserted that the accused product, with use, became identical to the patented invention. Here, Palmgard is not contending that the padding will actually wear away. Instead, Palmgard is apparently arguing that the padding, almost when or very soon after initial use occurs, becomes flexible to the extent that the accused product functions in the same way and achieves the same result as the glove covered by the Webster patent. Such an argument seemingly should be appropriately analyzed under the doctrine of equivalents.

**15.** Defendant's April 29, 1996 opposition to the summary judgment motion, Ex. 1, Aff. of Webster at ¶ 6.

a baseball mitt.[16] That claim may not have been patentable considering the prior Stanley patent, because the only relevant difference between the Stanley patent and the hypothetical claim is that the Stanley invention had open fingers and the hypothetical claim has closed fingers. It is clear from the discussion of prior art in the Stanley patent that closed-fingered athletic gloves were known in the industry. Putting the same padding configuration on a closed-fingered glove, as opposed to Stanley's open-fingered glove, would seemingly have been obvious.[17] As in *Wilson*, there is "no principled difference" between the hypothetical claim and the prior Stanley patent. Accordingly, Palmgard's patent cannot be given a range of equivalents broad enough to encompass the Stash glove.

Palmgard appears to contend that the padding in the accused Stash device is more likely to break down than the padding in the Stanley invention and that Stash and Stanley were therefore able to achieve the flexibility of the Webster invention using the padding configuration of the Stanley invention. If that were true, it is possible that the accused Stash product might infringe the Webster patent because the prior Stanley patent might not, under those circumstances, limit the range of equivalents to which the Webster patent could be extended.

To show that the padding in the accused Stash device is more likely to break down than the padding in the Stanley invention, Palmgard refers to an advertisement for a Stash glove which refers to "patented *Palmar* padding." [18] Palmgard appears to argue that such padding is different from the padding described in the Stanley patent, which was referred to, inter alia, as "temper foam" and T-foam.[19] As Stash and Stanley point out, the term "palmar" appears to refer to the placement of the padding and not its composition. In addition, the advertisement includes a reference to the Stanley patent, suggesting that the glove is made in accordance with it. For those reasons, Palmgard

---

**16.** The hypothetical claim, unlike the Stanley invention, would also have padding extending to the tip of the second finger. Because this Court has previously concluded that the Webster patent does not literally cover gloves which have padding on any portion of the inner tips of any digit, that element of the hypothetical claim is irrelevant to this discussion. Even if this Court is wrong in that regard, and the Webster patent does cover gloves, such as the accused Stash glove, which have padding on the inner tip of the index finger, Palmgard is no closer to proving that the accused Stash glove infringes the Webster patent. An accused device infringes a patent claim only if the device embodies every limitation of the claim, either literally or by a substantial equivalent. *Read*, 970 F.2d at 821–22 (Fed. Cir.1992). Even if the accused Stash device herein embodies the limitation regarding the padding on the inner tips of the index finger, this Court concludes *infra* that Palmgard has not shown that the accused Stash device embodies, either literally or by equivalent, the limitation regarding no padding over the palmar crease.

Also, Palmgard contends that the range of equivalents which can be assigned to the Webster invention is not limited by the Stanley invention for two reasons. First, according to Palmgard, that patent does not cover gloves designed to be used inside a baseball mitt. To the contrary, that patent states that the Stanley invention can be used "as a protective insert to a fielding or baseman's glove or a catcher's mitt." Stash and Stanley's April 15, 1996 motion, Ex. D "Stanley patent" at Col. 9, lines 56–63. Second,

Palmgard "strongly disputes Stash's attempt to characterize the Stanley glove ... as prior art" apparently because such a glove was not sold before the Webster patent was issued. Palmgard's April 29, 1996 opposition at 3. It is not the "Stanley glove" but the Stanley patent which is offered as prior art. Because that patent was issued before the Webster patent, and was therefore in the public domain at that time, it is prior art insofar as the Webster patent is concerned.

**17.** That conclusion is buttressed by the fact that the Peach patent, a patent upon which the patent examiner relied to reject Webster's initial patent application, before granting it upon reconsideration, shows both open and closed-fingered gloves. Stash and Stanley's May 10, 1996 Reply Memorandum at 15.

**18.** Palmgard's August 14, 1996 supplemental opposition, Ex. 1 at 2 (emphasis in the original). Stash and Stanley note that this filing violates Local Rule 102.1.a.i which states: "[T]he Clerk shall accept for filing only papers signed by a member of the Bar of this Court whose appearance is entered on behalf of that party." Because Stash and Stanley are not prejudiced by that violation, this Court will consider that filing. However, this Court asks counsel for Palmgard to adhere to all local rules in future dealings with this Court.

**19.** Stash and Stanley's April 15, 1996 motion for summary judgment, Ex. D "Stanley patent" at col. 11, lines 13–28.

has failed to offer sufficient evidence upon which a reasonable jury could conclude that the padding in the accused Stash product is different than the padding in the Stanley invention. Furthermore, Palmgard has offered no evidence that the padding in the accused Stash product is more likely to break down.

As stated *supra*, Palmgard has the burden of proving infringement at trial. "When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1695, 123 L.Ed.2d 317 (1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Under the circumstances of this case, showing that the padding in the accused Stash glove is more likely to break down than the padding described in the Stanley invention is an essential element of Palmgard's claim. Palmgard has failed to show sufficient evidence regarding that element. For that reason, Palmgard cannot survive Stash and Stanley's summary judgment motions.[20]

Because Palmgard has failed to show the existence of any genuine dispute regarding a relevant and material fact in connection with Stash's request for a declaratory judgment that the accused Stash product does not infringe the Webster patent, this Court will grant summary judgment to Stash and Stanley, and deny summary judgment to Palmgard, regarding that claim.

### IV. Validity

■ Stash and Stanley assert that claims 1–4, 9, 18 and 19 of the Webster patent are invalid as having been anticipated by the Stanley patent. "A patent is presumed valid and the party asserting invalidity must overcome this presumption by clear and convincing evidence establishing facts which support the conclusion of invalidity." *Texas Instruments v. U.S. International Trade Commission*, 988 F.2d 1165, 1177 (Fed.Cir.1993). Where the party attacking the patent relies only on prior art that was considered by the PTO in granting the patent-in-suit, part of the attacker's burden in overcoming the presumption of validity is "to show that the PTO was wrong in its decision to grant the patent." *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). When the attacker relies on art not considered by the PTO, such evidence may go further towards sustaining the attacker's burden because the court considering that evidence "is not faced with having to disagree with the PTO or with deferring to its judgment or with taking its expertise into account." *Id.* at 1360. However, whether or not the PTO considered the art upon which the party asserting invalidity relies, the burden upon that party of proving invalidity by clear and convincing evidence remains the same. *Id.* See also *Bausch & Lomb, Inc. v. Barnes–Hind*, 796 F.2d 443, 447 (Fed.Cir.1986), *cert. denied*, 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987); *Atlas Powder Co. v. E.I. du Pont De Nemours*, 750 F.2d 1569, 1573 (Fed.Cir. 1984).

■ Palmgard asserts that the PTO considered the Stanley patent as prior art to the Palmgard patent and nevertheless issued the Palmgard patent. Palmgard notes that the

---

20. Stash and Stanley also asserted that the doctrine of prosecution history estoppel, or file wrapper estoppel, prevents Palmgard from successfully claiming that the accused product infringes the Webster patent. "Prosecution history estoppel precludes a patentee from obtaining in an infringement suit patent protection for subject matter which it relinquished during prosecution in order to obtain allowance of the claims." *Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 291 (Fed.Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996). In the within case, as stated *supra*, Webster was initially unsuccessful in obtaining

allowance of his claims in the PTO until he narrowed them to specify padding only in certain locations. Stash and Stanley argue that prosecution history estoppel prevents Palmgard from now asserting that gloves which have padding in those areas infringe the Webster patent. In light of this Court's acceptance, for purposes of summary judgment, of Palmgard's theory that the padding breaks down over the palmar crease, it appears that it is not prosecution history estoppel, but rather the prior art, which prevents Palmgard from asserting that the accused Stash glove infringes the Webster patent.

Stanley patent is referenced in the Webster patent and offers certain regulations from the Manual of Patent Examining Procedure to suggest that such reference indicates that the patent examiner considered the Stanley patent. Stash and Stanley respond that the regulations Palmgard offers were not in effect in 1988 when the Webster patent was issued and that the regulations which were in effect at that time do not suggest that the reference to the Stanley patent indicates that it was weighed by the patent examiner who issued the Webster patent. Notwithstanding the regulations, the record indicates that Palmgard brought the Stanley patent to the attention of the examiner. Whether the Stanley patent was actually considered by the examiner appears to be a disputed issue of fact. In considering Stash and Stanley's motions for summary judgment, that fact will be construed against them. Therefore, for purposes of this summary judgment motion, this Court will assume that the Stanley patent was considered by the patent examiner who issued the Webster patent.

In support of their motions for summary judgment regarding partial invalidity, Stash and Stanley contend that if the padding configuration in the Stanley patent and in the accused Stash product necessarily develops a crease at the palm, the Stanley patent inherently anticipates certain claims of the Webster patent. "A claim is anticipated and therefore invalid only when a single prior art reference discloses each and every limitation of the claim ... The disclosure need not be express, but may anticipate by inherency where it would be appreciated by one of ordinary skill in the art." *Glaxo v. Novopharm*, 52 F.3d 1043, 1047 (Fed.Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 516, 133 L.Ed.2d 424 (1995). Furthermore, "[a]nticipation is a factual matter." *Id.* Anticipation is therefore a question for the jury unless this Court can determine it under the principles of summary judgment.

Stash and Stanley's arguments ignore the possibility that the padding in the accused Stash product is more likely to break down than the padding in the Stanley invention. Furthermore, even if the padding in the two products is the same, that fact alone does not indicate that the Webster patent is invalid by anticipation. The difference between the Stanley invention (which has a single pad covering the palm and a digit and which apparently develops a crease allowing flexibility at the palmar crease) and the allegedly infringing claims of the Webster invention (which have separate palmar and digit pads) appears slight to this Court. However, the Webster invention might provide more flexibility than the Stanley invention, or may at least provide flexibility without the need to "break in" the glove. Apparently, the patent examiner who issued the Webster patent and who, at least for purposes of this summary judgment motion, considered the Stanley patent in so doing, found some patentable difference between the two types of padding configurations. Stash and Stanley have provided no specific facts, as required by the caselaw cited *supra*, to indicate that the PTO was wrong in that conclusion or that separating the padding as the Webster invention does to allow more flexibility would have been "appreciated by one of ordinary skill in the art." *Id.*

With respect to the partial invalidity claim, Stash and Stanley bear the burden of proof at trial. The specific facts indicated above provide an essential element of their claims. Because they have failed in that regard, they have failed to carry their summary judgment burden.

## V. Conclusion

For the reasons stated *supra*, this Court will, in a separate Order of even date herewith, grant to Stash and Stanley summary judgment with respect to their non-infringement claims and Palmgard's counterclaim for infringement, deny Palmgard's cross-motion regarding infringement, and deny summary judgment to Stash and Stanley regarding their partial invalidity claims.