Bacon & Thomas, Washington, D. C. (Jesse B. Grove, Jr., Washington, D. C., of counsel) for appellants.

Joseph Schimmel, Washington, D. C. (Leroy B. Randall, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

56 CCPA

**Application of Vladimir PETROW, Alan Jeffery Thomas and Oliver Stephenson.**

**Patent Appeal No. 7970.**

United States Court of Customs and Patent Appeals.

Nov. 7, 1968.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claim 10 of appellants' application for a reissue patent.[1]

The claimed invention is a novel chemical compound formed by the reaction of chloral and betaine. The description of the compound is set forth in the specification as follows:

> We have made the unexpected discovery that chloral and its hydrate combine exothermically with betaine, a physiologically inactive, naturally-occurring base, to form a new com-

1. Serial No. 348,838 filed February 6, 1964 for reissue of patent 3,028,420 issued April 3, 1963.

pound of empirical formula $C_7H_{14}O_4NCl_3$ which may be obtained in crystalline form from solvents such for example as water or ethanol. Infrared examination of this new compound reveals that it no longer possesses the hydroxyl bands characteristic of chloral hydrate, but only a shoulder on the high frequency side of the main band of the dispersing medium (viz. liquid paraffin B.P.) at 3000 cm.$^{-1}$, and one broad carbonyl band at 1615 cm.$^{-1}$ (betaine carboxylate). This indicates strong hydrogen-bonding between the hydroxyl groups of chloral hydrate and the

$$COO.$$

group of betaine which is held with charge by the stable positive

$$+$$
$$-N(CH_3)_3$$

group. This new compound is probably 6 – trichloromethyl – 4,8 – dihydra – 1,3,5,7 – tetroxacycloöct – 2 – ato – trimethylammoniomethane of formula:

which formula represents a structural type hitherto unknown in organic chemistry.

According to the present invention there is provided a compound of betaine or betaine hydrate and chloral or chloral hydrate having the empirical formula.

$$C_7H_{14}O_4NCl_3$$

and M.P. 122.5° to 124.5° C.

\* \* \* \* \* \*

The new compound according to the present invention separates from solvents such for example as water or ethanol in the form of large crystals of M.P. 122.5° to 124.5° C. (corr.).

These crystals are free from the odour of chloral and its hydrate. The new compound may be converted into pharmaceutical preparations such as tablets, which tablets are free from chloral-like odour and when taken with a glass of water are essentially free from unpleasant chloral-like taste. The new compound is fully effective clinically as an hypnotic agent and thus represents a new and significant advance in chloral therapy.

The sole claim before us on this appeal is product claim 10, process claims having been allowed:

10. A compound having the empirical formula $C_7H_{14}O_4NCl_3$ corresponding to an equimolar ratio of chloral, betaine, and water, said compound having the hypnotic and sedative properties of chloral while being essentially free from unpleasant chloral-like taste and odor, said compound on infra-red examination in liquid paraffin as the dispersing medium having no hydroxyl bands characteristic of chloral hydrate, but only a shoulder on the high frequency side of the main band of the dispersing medium at 3000 cm.$^{-1}$, and one broad carbonyl band at 1615 cm.$^{-1}$, and said compound being crystallizable from water and ethanol in the form of crystals having a melting point of 122.5° C. to 124.5° C.

This claim was rejected on the ground that appellants had given up true product claims during prosecution of their original application in order to obtain a patent containing product-by-process claims, and that this abandonment of true product claims created an estoppel which prevents appellants from recapturing a true product claim by reissue.

The pertinent claim which appellants abandoned during prosecution of their original application and upon which the alleged estoppel is based was claim 4, which reads as follows:

4. A compound of betaine and chloral having the empirical formula $C_7H_{14}O_4NCl_3$ and M.P. 122.5° to 124.5° C.

The examiner twice rejected this claim as being an "improper product-by-process" claim, but did not make the second rejection final. Appellants' attorney, being as mystified as this court as to why the examiner thought this was a product-by-process claim at all, let alone an improper one, held an interview with the examiner. Appellants' attorney concluded at the interview that the examiner's real concern was his feeling that no true product claim could issue based upon this specification, but that a proper product-by-process claim would be allowable. Appellants' attorney therefore canceled his true product claim, and replaced it "by one proper product-by-process claim, namely, claim 6."

Claim 6, as subsequently amended, is as follows:

6. The compound of betaine and chloral produced by the process of claim 1, said compound having the empirical formula $C_7H_{14}O_4NCl_3$ and M.P. 122.5° to 124.5° C.

Appellants' patent subsequently issued containing this product-by-process claim and three process claims. After issuance, appellants concluded that the product-by-process claim is not as broad a claim as they had a right to, and they filed the reissue application now before us in an attempt to obtain a true product claim.

The issue here is whether appellants committed "error" within the meaning of 35 U.S.C. § 251. Determination of that issue requires consideration of the specific question of whether the circumstances shown by the record are such as to establish that the cancellation of claim 4 was such an action as would estop appellants from obtaining, through reissue, the appealed claim. In deciding the question, it will be necessary to compare appealed claim 10 with canceled claim 4.

We think it well to state at the outset that we are guided herein by the language in In re Willingham, 282 F.2d 353, 48 CCPA 727, where this court observed:

The deliberate cancellation of a claim of an original application in order to secure a patent cannot ordinarily be said to be an "error" and will in most cases prevent the applicant from obtaining the cancelled claim by reissue. The extent to which it may also prevent him from obtaining other claims differing in form or substance from that cancelled necessarily depends upon the facts in each case and particularly on the reasons for the cancellation.

In appealing to this court, appellants have noted the case law which holds that an applicant who has abandoned a claim is estopped from recapturing a claim of equal scope in a reissue. Appellants argue that these cases are inapplicable because the claim presented in the reissue application is of much different scope than abandoned claim 4. They argue that claim 4, listing only a melting point and an empirical formula, which is no more than an elemental analysis, does not pinpoint a specific compound because it could describe a plurality of compounds having identical melting points and empirical formulae. They contrast this with claim 10 which they say contains a sufficient recitation of properties to insure that a single compound only is encompassed within the claim. They also argue that claim 4 is clearly different from claim 10 because it is unpatentable under the tests laid down by the Board of Appeals in Ex parte Brian, 118 USPQ 242, whereas claim 10 is patentable.

In view of these arguments, it is appellants' position that:

* * * the controlling feature in the present case is the fact that applicants are not attempting to recapture the same or an immaterially different claim from that cancelled * * *.

The solicitor responds to these arguments by pointing out that the specification discloses one and only one compound. Claim 4 is therefore directed to the identical compound as is claim 10. He states that appellants' current position that claim 4 is so broad in scope as to cover other compounds is inconsistent with

their statements during prosecution indicating that claim 4 "identifies the new compound." He argues that the Patent Office never indicated that claim 4 was so broad as to cover products outside the scope of the invention.

▆ It seems to us that the solicitor's argument that the claims are directed to the identical compound fails to take into consideration that section 251 requires that the patent reissue for *the invention* disclosed in the original patent. We feel that the fact that claim 10 recites more inherent properties of the disclosed compound than does claim 4, so as to more fairly "fingerprint" it, results, under the circumstances shown, in a claim differing in form, as contemplated by the language quoted from In re Willingham, supra, as well as presenting a claim having a different scope of legal protection. While claim 10 may be directed to the same subject matter, that is, the disclosed invention, it does not necessarily follow that the scope of legal protection afforded it is the same as that of claim 4.

Appellants' argument that claim 4 was unpatentable is apparently based upon their conclusion reached after the interview with the examiner. Unfortunately, the record does not reveal what occurred at the interview between appellants' attorney and the examiner. However, appellants' belief then that no true product claim could issue based upon this specification appears to be shared by the examiner in the instant case, as noted in his Answer:

Aside from the question of whether a Reissue patent is proper, the question of presenting a compound claim which meets the requirements of 35 USC 112 is raised. Here again it was the Examiner's position in application S.N. 33,637 that the disclosure did not contain sufficient characterization of the product to enable applicants to define it other than by process limitations. The Examiner in the instant case takes exactly the same position. * * *

It is significant, moreover, that claim 4 was never rejected for this reason and the board's response to the examiner's treatment of claim 10 was as follows:

Claim 10 also stands rejected as indefinite because it does not particularly point out and distinctly claim the compound. We find the claim presents sufficient of the distinctive properties and characteristics of the compound to adequately define the compound. See Ex parte Brian et al., 118 USPQ 242, quoted by appellants * * *.

The appellants erred in believing that *no true product claim could issue based* upon this specification. Now they have convinced the Patent Office that product claim 10 is in allowable form. We do *not think there are sufficient facts in* the record to base a holding that the cancellation of claim 4 was in any sense an admission that claim 10 was not in fact patentable to appellants at the time claim 4 was canceled.

We have assessed the solicitor's arguments and considered the numerous cases on reissue cited in support of the position of the board, but we feel that the substitution, as here, of a claim proper in form for a claim believed to be formally defective under 35 U.S.C. § 112 but not rejected by the examiner for this reason is distinguishable from the fact situation of these prior cases.

▆ We hold specifically that the cancellation of claim 4 in the original application was, under the circumstances of this case, an "error" within the meaning of 35 U.S.C. § 251.

The decision of the board is reversed.

Reversed.