**SEATTLE BOX COMPANY, INC.,**
d/b/a Seattle-Tacoma Box
Company, Appellee,

v.

**INDUSTRIAL CRATING & PACKING,**
INC., and James F. Rennels,
Appellants.

**Appeal No. 83–890.**

United States Court of Appeals,
Federal Circuit.

March 26, 1984.

Richard W. Seed, Seattle, Wash., argued for appellants. With him on brief was B.F. Berry, Seattle, Wash.

F.A. Utecht, Long Beach, Cal., argued for appellee. With him on brief were Ford E. Smith and David L. Garrison, Seattle, Wash.

Before DAVIS, Circuit Judge, NICHOLS, Senior Circuit Judge, and BALDWIN, Circuit Judge.

NICHOLS, Senior Circuit Judge.

This appeal is from a judgment of the United States District Court for the Western District of Washington, holding United States Patent No. Re. 30,373 valid and infringed, 217 USPQ 343 (W.D.Wash.1982), granting a permanent injunction, and awarding damages. We *affirm in part, reverse in part, vacate in part*, and *remand.*

## I

### *Background*

Plaintiff-appellee Seattle Box Company, Inc. ("Seattle Box") and defendant-appellant Industrial Crating and Packing, Inc. ("Industrial") are Washington State corporations which provide oil pipe bundling services to oil companies. Both corporations have their principal places of business in Washington State.

Seattle Box filed this action on July 2, 1980, alleging that Industrial infringed U.S. Patent No. 4,099,617 ("the '617 patent") entitled "Shipping Bundle for Numerous Pipe Lengths." Seattle Box brought the action in its capacity as assignee of the rights in the '617 patent. On August 19, 1980, the United States Patent and Trade-

mark Office ("PTO") reissued the '617 patent, with broadened claims, in U.S. Patent No. Re. 30,373 ("the '373 reissue patent"). Seattle Box also was the assignee of the rights in this patent. On October 10, 1980, Seattle Box amended its complaint to allege infringement of the '373 reissue patent. Industrial answered and counterclaimed, alleging patent invalidity, noninfringement, and patent misuse.

The district court held in favor of Seattle Box on May 4, 1982, and after an accounting for damages, entered judgment on February 9, 1983. Industrial presses only the issues of patent invalidity and noninfringement here on appeal.

### A. *The Invention*

Until at least 1975, oil companies commonly transported oil pipes of various diameters and with weights upwards of 40 pounds per foot, as loose joints about 40 feet in length. Since no packaging procedure capable of safely and securely handling oil country pipe then existed, many pipes were irreparably damaged in transit and during loading and unloading operations. Rennels, a representative for Atlantic Richfield Company ("ARCO"), in late 1975 recognized ARCO's pipe transport problems and discussed with the patentee, Ferdinand J. Nist, Jr. ("Nist"), ARCO's need for a pipe bundling method which would get oil pipe to the Alaskan North Slope without bends, dents, or damaged ends. Although at the time of this discussion Nist had no experience in packaging oil pipes, he nevertheless undertook the project.

After extensive experimentation, which the district court opinion sets forth in great detail, Nist settled on a system in which he placed a tier of pipes across parallel horizontal wooden beams, or "sleepers." To ensure that adjacent pipes remained separated, Nist placed between them a double-concave wooden spacer block, depicted in Figure 1.

Figure 1

Nist stacked several tiers of these crossing rows of sleepers and pipes in order to make one pipe bundle. To prevent the weight of the upper pipes from crushing the lower pipes in either a bundle or a stack of bundles, Nist made his spacer blocks with a height at least equal to the pipe's diameter; the spacer blocks, therefore, absorbed most of the weight of the overhead load.

Figures 2–4 below depict a pipe bundle made according to the Nist method. In these figures, pipes 18, 36, and 44 lie across wooden sleepers 10, 30, 40, and 50. Double-concave spacers 22 separate the pipe. Finally, strapping materials 38, 46, 52, 59, and 60 hold together the entire bundle.

Figure 2

Figure 3

Figure 4

### B. *The Patent*

Seattle Box filed an application for a patent on Nist's invention on February 17, 1977. Claim 1 of this application stated that the double-concave spacer block had a "height substantially equal to the thickness of the tier of pipe lengths."

Seattle Box's patent attorney, however, narrowed Claim 1 during the application's prosecution so as to specify that the spacer block had a height only "greater than the diameter of the pipe." Soon after the attorney made this narrowing amendment, although not necessarily because of it, the patent examiner allowed each of the application's claims. The '617 patent issued on July 11, 1978.

On December 1, 1978, Seattle Box filed an application to have the '617 patent reissued with broader claims. Nist averred in support of this application that neither the

patent examiner nor the cited prior art required the narrow scope of the issued claims, and that the limitation on the height of the spacer block in his Claim 1 was unnecessary and "arose through inadvertence by counsel." Nist additionally stated that "in reality each overlying or superposed sleeper need only be separated from its underlying companion a distance equal to but not less than the diameter (*i.e.*, the thickness) of the pipes in each tier interposed between the sleepers to avoid forces being applied to squeeze the pipe in bundle stacks or handling operations * * *."

The PTO granted the application for the reissue patent and issued the '373 reissue patent on August 19, 1980. In addition to allowing Seattle Box to amend Claim 1 to specify a spacer block "of a height *substantially equal to or* greater than the thickness of the tier of pipe length" [emphasis in original], the PTO also allowed five wholly new claims, Claims 8–12.

The reissued, amended Claim 1, upon which claims 2–6 depend, is a product claim for:

 1. A shipping bundle formed of a plurality of lengths of pipe of a common size, comprising:

 a base formed of a first plurality of transverse sleepers located in spaced-apart parallel arrangement;

 a tier of pipe lengths resting on said base, adjacent pipe lengths of said tier being separated by blocks in transverse series, each block having opposed concavities substantially embracing the curved sides of said adjacent pipe lengths;

 each of said series of blocks being located to stand on one of said sleepers and being of a height *substantially equal to or* greater than the thickness of the tier of pipe lengths;

 a second plurality of sleepers, each traversing said pipe tier in overlying alignment with a sleeper of said first plurality, the sleepers of said second plurality being supported on the series of separating blocks; and

a bundling strap tightly encircling each sleeper of said first plurality, the separating blocks resting thereon, and the respective overlying sleeper. [Emphasis in the claim.]

The reissued, new Claim 8, upon which claims 10 through 12 depend, is a claim for a process using:

 8. The method of bundling a plurality of lengths of pipe of a common size, comprising:

 forming a first bundle base by laying down a first plurality of transverse sleepers in spaced-apart parallel locations;

 depositing a first tier of pipes on said bundle base and at each location concavely chocking adjacent pairs of pipes of said tier in spaced-apart relation;

 traversing the first tier of pipes with a second plurality of transverse sleepers aligned with said first plurality at each location and vertially [sic] spaced apart by said chocking from said first plurality a distance substantially equal to or greater than the diameter of said pipes;

 tightly encircling the pipes of said first tier with strapping adjacent at least two of said locations; and,

 tightly encircling the sleepers at each location with strapping.

Claims 7 and 9, withdrawn before trial, are not at issue here.

## II

### Issues

The parties argue three main issues in this appeal:

 1. Did the trial court err in not holding the Nist '373 reissue patent invalid (a) for obviousness under 35 U.S.C. § 103, (b) for indefiniteness under 35 U.S.C. § 112, or (c) under the recapture rule for obtaining through reissue claims of improper scope?

 2. Did the trial court err in (a) finding that Industrial presently infringes claims of the '373 reissue patent and (b) enjoining that infringement?

3. Did the trial court err in (a) finding that Industrial infringed claims of the '617 patent before the '373 reissue patent issued and (b) holding Industrial liable for that infringement?

## III

### *Validity*

A. *Section 103—"Obviousness"*

We are, once again, confronted with a challenge to a trial court's judgment on the issue of obviousness. We begin, as usual, with a careful review of the district court's fact-findings made according to the Supreme Court's prescribed ritual: "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). We cannot and will not set these fact-findings aside unless the appellant persuades us that the findings are *clearly* erroneous. *Fed.R.Civ.P.* 52(a). Since Industrial has not left us here with a definite and firm conviction that the trial judge has committed a mistake, we rely fully on the district court's findings.

#### 1. *Factual Determinations*

##### a. *Scope and Content of the Prior Art*

Before trial, Industrial identified as prior art some seventy United States patents, three West German patents, a 1960 Association of American Railroads ("AAR") publication entitled "Rules Governing the Load-ing of Steel Products Including Pipe on Open Top Cars," and a United States Government leaflet on storage and materials handling. It is undisputed that no single prior art reference exhibits all the features of the invention claimed in the '373 reissue patent.

At trial, Industrial focused the court's attention on several prior art references which the patent examiner had not considered and which Industrial deemed significantly more pertinent than those references the examiner did cite. Industrial concentrated, in particular, on four references which the patent examiner did not cite: the AAR publication; British Patent No. 561,-423, issued 1944; and Parker U.S. Patents Nos. 1,801,451, and 1,821,234, issued 1931.

The district court expressly held that this art was not more pertinent than the art which the patent examiner cited. The parties here have completely fashioned their argument around this art, however. We assume, therefore, that this art is appropriate for purposes of reviewing the district court's holding of nonobviousness.

The AAR publication discloses the use of (1) wooden sleepers between rows of pipe, (2) strapping material passing at various levels around the tiers of pipe, and (3) "wood chock blocks" cut to fit the contour of the pipe. The wood blocks, however, are *nailed* to only the *ends* of the sleepers; they are not placed between individual pipe.

The British Patent No. 561,423 discloses sheet metal spacers formed with double-concave faces which match the curvature of bundled cylindrical articles.

British Patent No. 561,423

Parker Patents Nos. 1,821,234 and 1,801,-451 disclose spacers having double-concave sides to hold conduits in a spaced relationship. The Parker patents also disclose spacers used to support two tiers of pipe.

Parker Patent No. 1,801,451

## Parker Patent No. 1,821,234

**b.** *Differences Between Prior Art and '373 Reissue Claims.*

The trial court found that although most of the elements of Nist's invention were known, nothing in the prior art disclosed a double-concave block adapted to provide vertical support for a layer or more of pipe located on sleepers above a bottom layer of pipe. The prior art, that is, nowhere taught using wooden spacer blocks with a weight bearing capacity to support sleepers.

**c.** *Level of Skill*

The district court found "the level of skill in the pipe packaging art at the time Nist made this invention to be that * * * [of] persons familiar with the packaging of tubular goods for safe transportation from a packaging site to a remote location, with such persons having engineering or mechanical skills acquired by actual experience."

**d.** *Other Considerations*

The district court made several additional fact-findings which are relevant when re-viewing an invention's obviousness. The court noted, in particular, that Nist solved after extensive experimentation a long-felt but unsolved need for an improved pipe bundle, and that Seattle Box enjoyed commercial success with its claimed bundle.

**2.** *Legal Determinations*

 The district court held that Industrial did not meet its burden of overcoming the '373 patent's statutory presumption of validity, 35 U.S.C. § 282. Industrial simply reargues to us its position that the facts clearly show the obviousness of the invention, relying on the "pertinence" of its newly discovered prior art. Industrial makes two fundamental errors, however. First, Industrial seems to forget that the district court expressly held that Industrial's art was *not* more pertinent than the art which the patent examiner cited. This court does not consider evidence *de novo*. *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, at 1543 (Fed.Cir. 1984). Second, even if the art were more pertinent, this fact alone does not rebut the statutory presumption of validity. *Leinoff v. Louis Milona & Sons, Inc.,* 726 F.2d 734, 738, 220 USPQ 845, 847–48 (Fed.Cir.1984).

In denouncing the district court's adverse holding, however, Industrial argues that the district court improperly adopted, and thus incorrectly relied on, the testimony of Seattle Box's expert. This argument has no merit. A trial judge has sole discretion to decide whether or not he needs, or even just desires, an expert's assistance to understand a patent. We will not disturb that discretionary decision except in the clearest case. This is not such a case. Here, the trial judge reasonably could have believed he needed the testimony of experts to aid him with the sometimes complex patent specifications and prior art references.

Industrial bore the burden in trial of persuasion that one of ordinary skill in the art *would have found* the subject matter claimed, *as a whole,* obvious *at the time* the invention was made. Industrial did not meet this burden; the facts do not clearly show it did. The invention comprises some features found in the prior art and some that are new and, in our view, not even suggested by the prior art. *In re Sernaker,* 702 F.2d 989, 217 USPQ 1 (Fed.Cir. 1983). The prior art did not suggest the combination of features made here. We affirm the district court's analysis of and holding on Industrial's section 103 defense.

B. *Section 112—"Indefiniteness"*

■ Industrial argues that the use of the term "substantially equal to" in the '373 patent's claims makes the claimed subject matter indefinite and the claims invalid under 35 U.S.C. § 112. Industrial contends, it appears, that since its patent counsel was uncertain as to just how equal "substantially equal to" is, the claims must be indefinite.

Definiteness problems often arise when words of degree are used in a claim. That some claim language may not be precise, however, does not automatically render a claim invalid. When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree. The trial court must decide, that is, whether one of ordinary skill in the art would understand what is claimed when the claim is read in light of the specification.

The trial court found here that an expert would know the limitations of the claims. The specification clearly sets forth, for example, that the divider blocks are intended to absorb the weight of overhead loads. Furthermore, even if Industrial needed to experiment so as to determine the limits of the '373 patent's claims, the claims would not be invalid under section 112. *See, e.g., W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1557, 220 USPQ 303, 316 (Fed.Cir.1983). Industrial has not carried its burden of persuading us that the '373 patent is invalid for indefiniteness.

C. *Recapture Rule*

■ Industrial argues that the PTO incorrectly allowed the broadened reissue claims with a scope equivalent to the scope of the preamended claims in the original patent application. The recapture rule does not apply here, however, because there is no evidence that Seattle Box's amendment of its originally filed claims was in any sense an admission that the scope of that claim was not in fact patentable. *See In re Petrow,* 402 F.2d 485, 488, 159 USPQ 449, 451 (CCPA 1968); *see also Ball Corp. v. United States,* 729 F.2d 1429 (Fed.Cir.1984).

## IV

### *Liability*

The court must consider Industrial's liability for infringement, if any, during two distinct time frames. The first period extends between the date the original patent issued, July 11, 1978, and the date the reissue patent issued, August 19, 1980. Seattle Box's only enforceable patent rights during this period arise from 35 U.S.C. § 252, which allows claims in a reissue patent to reach back under certain circumstances to the date the original patent issued. The second period begins on the date the reissued patent issued, August 19, 1980. During this period, Seattle Box's broadened patent claims cover a double-concave block with a height "substantially

equal to or greater than" the diameter of the separated pipes. We consider the two time periods *seriatim*.

### A. *Activities Occurring Before the '373 Reissue Patent Issued.*

Industrial asserts that the district court erred in finding it liable for infringement done before the '373 reissue patent issued. We agree.

■ An original patent cannot be infringed once a reissue patent has issued, for the original patent is surrendered. At one point in the history of the American patent law, this surrender precluded any action for infringement for acts done prior to the surrender. Courts would not allow a patentee to *bring* an action in response to acts done before the reissue patent issued since no patent existed upon which one could allege infringement. Courts, moreover, would dismiss for a failure to state a cause of action any action *filed* before the patent was surrendered since the patent sued on no longer existed. Courts acted, in other words, as if the original patent never was. *See* Federico, *Intervening Rights in Patent Reissues*, 30 *Geo.Wash.L.Rev.* 603, 605 (1962).

To ameliorate the harsh effect of a patent's surrender, Congress has legislated that under certain circumstances claims of the original patent have a form of continuity if carried over to the reissue patent. Congress has incorporated its most recent version of this rule into 35 U.S.C. § 252, the first paragraph of which provides that:

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in amended form, but *in so far as the claims of the original and reissued patents are identical,* such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, *to the extent that its claims are identical with the original patent,* shall

constitute a continuation thereof and have effect continuously from the date of the original patent. [Emphasis supplied.]

Congress, in this statute, has explicitly limited claim continuity to claims in the reissued patent *identical* to claims in the original patent. The statute does not allow the claims of the original patent some other form of survival. The original claims are dead. The statute permits, however, the claims of the reissue patent to reach back to the date the original patent issued, *but only if* those claims are identical with claims in the original patent. With respect to new or amended claims, an infringer's liability commences only from the date the reissue patent is issued.

At issue in this case is Congress' meaning of the word "identical." The district court interpreted "identical" to mean "essentially identical," noting that other courts have interpreted the word "identical" in section 252 in a way which does not limit claim continuity to literally identical claims. It cited *Austin v. Marco Dental Products, Inc.,* 560 F.2d 966, 195 USPQ 529 (9th Cir.1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978) and *Akron Brass Co. v. Elkhart Brass Manufacturing Co.,* 353 F.2d 704, 147 USPQ 301 (7th Cir.1965).

*Akron Brass* and *Austin* permitted changes in a reissue patent's claims, however, only if *without substance.* In *Akron Brass,* a reissued claim substituted the word "outlet" for the word "inlet" in the original claim. Since it was already clear what was intended, the court there noted, substitution of "outlet" for "inlet" in no way enlarged or modified the substance of the claim. In *Austin,* the court found a claim in the reissued patent "identical" to one in the original patent where a modification was made to "make more precise the language used without substantive changes in the claims." 560 F.2d at 973, 195 USPQ at 534.

■ Since we are not asked to, we do not have to decide exactly what "identical" does mean. It is clear, though, that "iden-

tical" means, *at most*, "without substantive change." Seattle Box, in broadening its claims' scope to cover not only spacer blocks "greater than" but also "substantially equal to" the diameter of the pipes in a bundle, has, in our view, made substantive change to its claims. The original claims cannot reasonably be read as intending, but for some inaccuracy in their expression, the same coverage as the reissue claims. Here, the addition is not a matter of a mere clarification of language to make specific what was always implicit or inherent.

We hold, therefore, that Seattle Box's broadened reissue claims, with the added words "substantially equal to," are not "identical" to its original claims, assuming "identical" means "without substantive change." The district court erred in interpreting "identical" in section 252 to mean "essentially identical." Thus, Seattle Box cannot collect damages for any activities performed before its new and broadened claims issued in the reissue patent. We reverse the trial court's award of damages against Industrial for acts done prior to the date the reissue patent issued.

B. *Activities Occurring After the '373 Reissue Patent Issued.*

Industrial argues that since Seattle Box gave up its claim to spacer blocks "substantially equal to" the diameter of the separated pipe during prosecution of the '617 patent, the doctrine of file wrapper estoppel prevents Seattle Box from "recapturing" that language under the doctrine of equivalents. Industrial contends, furthermore, that even if we affirm the district court's finding of infringement under the doctrine of equivalents, the doctrine of intervening rights, 35 U.S.C. § 252, saves Industrial from liability. We consider the infringement argument first.

1. *Infringement*

■ The trial court found that Industrial's pipe bundles "clearly included each of the elements of claims 1 through 5, 8, 10 and 11 of Re. 30,373." Industrial admits

that its bundles utilize the general elements of the claims in issue, namely, sleepers, pipes, double-concave spacer blocks, and strapping material. In dispute is the scope of Seattle Box's reissued claim 1 which requires as a necessary element of the invention a spacer block "being located to stand on one of said sleepers and being of a height *substantially equal to or* greater than the thickness of the tier of pipe lengths." [Emphasis in original.]

Industrial asks us to decide whether the '373 reissue patent's claims can have the effect of covering spacer blocks which are "slightly shorter" than the diameter of oil pipes which they separate. Industrial argues, first, that since Seattle Box gave up the phrase "substantially equal to" during its prosecution of the original patent application, it cannot assert that scope here. Industrial appears throughout its argument to forget that Seattle Box does not allege in this action infringement of its original claims, but rather, alleges infringement of presumably valid *reissue* claims. These claims *specifically* extend to spacer blocks "substantially equal to" the separated pipes' diameters. Seattle Box has every right to assert the full scope of its claims here.

Industrial next argues that its spacer blocks are not substantially equal to the diameter of the separated pipes, as the claims require. Industrial contends that on the advice of its patent counsel, and specifically to avoid infringement, it instructed its spacer block manufacturer to make the spacer blocks for 5½" pipes at least one-sixteenth of an inch *less than* the pipe diameter.

■ The district court found that the "slightly shorter, double-concave Industrial blocks would correspond to the 'substantially equal to' limitation * * * " under the doctrine of equivalents. The court's belief that it found infringement under the doctrine of equivalents, however, is wrong. The doctrine of equivalents only comes into play when there is no literal infringement. *See Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1361, 219 USPQ 473, 480

(Fed.Cir.1983). Since "substantially equal to" embraces "slightly less than," the district court's finding that Industrial's "slightly shorter" spacer blocks *were* "substantially equal to" the pipe diameter is a finding of literal infringement which is not clearly erroneous.

The district court. expressly found infringement, though, only in regard to spacer blocks one-sixteenth of an inch less than the diameter of the separated pipe. This finding we affirm. The report of the Special Master concerning Seattle Box's lost profits, however, indicated that after trial had ended, Industrial made 84 pipe bundles with spacer blocks *one-quarter* of an inch less than the diameter of the separated pipe. The Special Master correctly refused to consider whether *these* blocks infringed the '373 reissue patent; he simply detailed the profits lost due to these bundles. The district court awarded damages for these bundles without making any express finding as to whether they infringed the '373 patent.

As we indicated earlier, the trier of fact must determine the scope of an imprecise phrase such as "substantially equal to," which, by its very nature, has a fact-dependent meaning. The fact that a spacer block one-sixteenth of an inch less than a pipe diameter infringes a claim does not necessarily indicate that a spacer block one-quarter of an inch less than a pipe diameter also infringes that claim. There is a new literal infringement issue to decide: are spacer blocks one-quarter of an inch less than the diameter of the separated pipe "substantially equal to" the diameter of those separated pipes? The trier of fact must make express findings in response to this question. Such findings help delineate the metes and bounds of the claim, and enable the alleged infringer to determine what it must do to avoid infringement. We therefore vacate the award of damages as to the 84 bundles using spacer blocks one-quarter of an inch less than the diameter of the separated blocks and remand for the necessary findings of fact.

We limit the remand in this case, however, to a determination of whether the quarter-inch short spacer blocks literally infringe the claims in issue. Normally, if the trier of fact has found that there is no literal infringement, it may consider whether there is infringement under the doctrine of equivalents. Here, however, Seattle Box expressly stated during prosecution of its reissue patent that a sleeper "need only be separated from its underlying companion a distance equal to *but not less than* the diameter (*i.e.*, the thickness) of the pipes in each tier interposed between the sleepers." [Emphasis supplied.] Since the claims issued for a separation "substantially equal to" the pipes' diameter, we recognize that some leeway is appropriate in determining literal infringement. Where no literal infringement exists, however, Seattle Box's statement during its prosecution of the reissue patent estops it from asserting that its claims have a broad effect under the doctrine of equivalents.

### 2. *Section 252—Intervening Rights*

When a reissue patent issues, a new patent with presumably valid claims exists. The reissue patent has "the same effect and operation in law, on the trial of actions for causes *thereafter arising,* as if the same had been originally granted in amended form, * * *" 35 U.S.C. § 252 [emphasis supplied].

The language quoted above expressly prevents a court from giving any consideration to the protection of intervening rights. The second paragraph of section 252 modifies the first paragraph, however, so as to protect intervening rights. The second paragraph provides, in pertinent part:

No reissued patent shall abridge or affect the right of any person * * * who made * * * or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of * * * the specific thing so made * * * or used, unless the making [or] using * * * of such thing infringes a valid claim of the

reissued patent which was in the original patent * * *.

The statute sets forth a single straightforward test for determining whether the doctrine of intervening rights protects an alleged infringer. The only question to ask under this test is whether claims of the original patent which are repeated in the reissue patent are infringed. Section 252 assumes that a patentee having valid claims in a patent will retain those claims in the reissued patent. If valid claims in the original patent appear unaltered in the reissue patent, the doctrine of intervening rights affords no protection to the alleged infringer.

■ We have already held, however, that the claims appearing in Seattle Box's reissued patent are substantively different than those in the original patent. That is, Seattle Box repeats *no* claim from its original patent in its reissued patent. Industrial, therefore, may properly raise a defense of intervening rights. *See Cohen v. United States,* 487 F.2d 525, 203 Ct.Cl. 57, 179 USPQ 859 (1973).

■ When the doctrine of intervening rights is properly raised, the court must consider whether to use its broad equity powers to fashion an appropriate remedy. The second paragraph of section 252 states:

> [The court] may provide for the continued manufacture, use or sale of the thing made * * * or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced * * * prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

The court is given the discretion to fashion a remedy from a wide range of options available to it. The court may, for example, (1) confine Industrial to the use of those double-concave blocks already in ex-istence, (2) permit Industrial to continue in business under conditions which limit the amount, type, or geographical location of its activities, or (3) permit Industrial to continue in business unconditionally.

The trial court, properly to exercise its equity powers, must carefully weigh standard equitable considerations. Since the trial court incorrectly held section 252 inapplicable here, it has yet to make any findings as to the equities of this case. Accordingly, we vacate this portion of the district court's judgment and remand the case for further proceedings consistent with this opinion.

## V

### Conclusion

We affirm the district court's holding that the '373 reissue patent is valid. We affirm its finding that some of Industrial's spacer blocks infringe the patent, but vacate the finding of infringement as to other blocks. We reverse the district court's finding of liability for any activities Industrial performed *before* the '373 reissue patent issued. Finally, we vacate the district court's conclusions as to the scope of relief to which Seattle Box is entitled for infringement *after* the '373 reissue patent issued. We remand this case to the district court for further proceedings. Each party to bear its own costs.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.