871 F.2d 1098
 37 Cont.Cas.Fed. (CCH) 76,023
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
BARED INTERNATIONAL COMPANY, INC., Appellant,
v.
The UNITED STATES, Appellee.
 No. 88-1631.
 United States Court of Appeals, Federal Circuit.
 March 29, 1989.
Rehearing Denied April 28, 1989.
Suggestion for Rehearing In Banc Declined May 11, 1989.
 
 Before FRIEDMAN, RICH and MAYER, Circuit Judges.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The decision of the Armed Services Board of Contract Appeals (Board), denying the appellant Bared International Company, Inc. (Bared) an equitable price adjustment in a construction contract to reflect the additional cost it incurred in feeding its employees, is affirmed.
 
 OPINION
 
 2
 * Bared was the successful competitive bidder on a government contract to build a high school at the Guantanamo Bay Naval Base in Cuba. The pre-bid specification section captioned "General Paragraphs" stated:
 
 
 3
 29. Messing: Contractor personnel may mess at the Gold Hill at current rates, presently $4.90/man per day, Navy Exchange food outlets or at other open food service facilities on a cash basis at current prices.
 
 
 4
 Shortly after the award of the contract, the Navy increased the rates at all its food outlets, including Gold Hill. The increase was worldwide and was designed to cover the Navy's overhead expenses in preparing and serving food. The daily charge at Gold Hill was increased from $4.90 to $9.40. The parties agree that the Gold Hill location was the only reasonable location for contractor personnel to eat at this isolated base during the construction work.
 
 
 5
 After the contracting officer denied the appellant's claim for additional compensation to cover the higher eating charges it had to pay, the appellant appealed to the Board, which denied the appeal. The Board held that the increase in messing charges "was a change brought about by a sovereign act with no participation, at all, by the contracting officer. In such a situation, we cannot hold the Government liable in the absence of an express contractual intention to do."
 
 II
 
 6
 In its brief to this court, the appellant contends that the sovereign act doctrine, upon which the Board relied, is inapplicable because paragraph 29 was a warranty by the government that the contractor could feed its employees at the base for $4.90 per day. At oral argument, the appellant contended alternatively that even if the provision were not a warranty, it should be interpreted as constituting an agreement by the government to feed the contractor's employees at the stated price of $4.90 a day.
 
 
 7
 We reject the appellant's characterization and interpretation of paragraph 29. The government did not there warrant that the cost of feeding the appellant's employees while working at the base would be $4.90 per day or agree to feed them for that amount. Instead, it stated that the employees "may" mess at Gold Hill or at "other open facilities on a cash basis." At Gold Hill such messing would be at "current rates, presently $4.90," and at the other facilities at "current prices."
 
 
 8
 As thus used, "current" meant the prices at the time the employees ate and not the prices when the contract was signed. The use of "presently" to describe the existing rate indicated that the rate might change in the future. If the parties intended that the appellant's employees would be fed for $4.90 per day under all circumstances, they could and presumably would have so stated simply and unequivocally, namely, by providing that the employees "may mess at the Gold Hill for $4.90/man per day."
 
 
 9
 The appellant contends, however, that other provisions of this subsection of the contract, dealing with charges for other goods and services, indicate that as used in the contract "current" rates and prices meant those in effect when the contract was signed. It points to paragraph 27, which provided that water and electricity "will be available ... at the prevailing government rate. Current rates are as follows: [a schedule followed]." Paragraph 27 further provided that if the "actual rate" the contractor paid varied by more than 15 percent from that specified, "the contract price will be adjusted" to reflect the difference that exceeded 15 percent.
 
 
 10
 Similar provisions providing for an increase in the contract price if the changes in charges exceeded 15 percent covered air transportation of personnel to and from the base ("current tariff rates") (paragraph 28), and petroleum products ("current major petroleum prices" stated) (paragraph 30). Another provision stated that filling station pumps could be utilized "by paying the current price at time of purchase" (no prices stated) (paragraph 30.1). Paragraph 33 provided that certain government material and equipment "may" be made available to the contractor at the prevailing rental rate.
 
 
 11
 These provisions tend to undercut just as much as to support the appellant's arguments, since they indicate that when the parties intended to limit the extent to which the appellant would be liable for changes in government rates and prices, they explicitly so provided. Moreover, the different wording used in these clauses to describe the rates and prices the appellant must pay--sometimes "current" and sometimes "prevailing"--suggests that the meaning of the word "current" varied according to the context in which it was used. As indicated, we conclude that in paragraph 29 the parties used "current" rates to mean those in effect at the time of eating, and that the statement that the current rates "presently" are $4.90 was merely a description of the existing rates and not a commitment by the government to continue those rates in effect for the duration of the contract.
 
 
 12
 The appellant further contends that as a policy matter the government rather than the contractor should bear any risks that the government controls and that are not attributable to or governed by the contractor. This argument, however, is based on the assumption that the appellant's interpretation of paragraph 29 is as plausible as the government's interpretation--a view we have rejected.
 
 
 13
 MAYER, Circuit Judge, dissenting.
 
 
 14
 In my view, the provision at issue is a warranty because both parties agreed it would be. In another provision worded similarly to this one, Bared secured an equitable adjustment when prices went up. Paragraph 33 of the contract provides:
 
 
 15
 33. GOVERNMENT MATERIAL AND EQUIPMENT: Certain Government material and equipment may be made available to the Contractor at the prevailing rental rates, subject to paragraph 40 (Availability and Cost of Government Materials, Equipment and Services) of this Section. Items below are listed at current rates.
 
 
 16
 (Schedule of rates omitted)
 
 
 17
 Significantly, paragraph 33, like paragraph 29 at issue here, does not disclaim government responsibility for price escalations of less than fifteen percent. This is in contrast to provisions dealing with goods and services such as petroleum, utilities, and transportation, the costs of which were not controlled by the government, which expressly stipulated that "[C]hanges in prices [of less than 15 percent from that specified in the contract] shall not be used as a basis for a change to the contract...."
 
 
 18
 As the Board found, "the Government first rejected appellant's request for a Change Order for increased equipment costs for the same reason it denied appellant's request for a Change Order for messing." On reconsideration, however, a change order for the equipment claim was granted. Within the same contract, similar provisions should be construed the same way; Bared is entitled to a change order to compensate for escalated messing costs.
 
 
 19
 The government's contention that the "current rates" referred to in the messing provision meant the prices at the time of eating, not the $4.90 per day specified in paragraph 29, is belied by a comparison with the language used by the parties in other provisions of the contract when just such a meaning was intended. Paragraph 22, for example, says: "Emergency dental care and treatment of an urgent nature is available at the Dental Clinic's Hospital Branch at the then current rate; the present rate is $40 per visit." And paragraph 30.1 says: "Regular filling station pumps at the Navy Exchange service station may be utilized by paying the current price at the time of purchase." Clearly, when the parties agreed that Bared would pay a prevailing price, not necessarily equal to the specified price, they knew how to, and did so provide. Here, they agreed, and paragraph 29 provides, that Bared would pay $4.90 per day for messing.