871 F.2d 1098
 10 U.S.P.Q.2d 1946
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
T.J. SMITH AND NEPHEW LIMITED, Plaintiff-Appellant,
v.
PARKE, DAVIS & COMPANY d/b/a Deseret Medical; Acutek
Adhesive Specialties, Inc.; and Deseret Medical,
Inc., Defendants/Cross-Appellants.
 Nos. 88-1449, 88-1499 and 88-1500.
 United States Court of Appeals, Federal Circuit.
 March 29, 1989.
Rehearing Denied May 18, 1989.
 
 Before MARKEY, Chief Judge, and RICH and EDWARD S. SMITH, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Appeals from a judgment of the United States District Court for the District of Utah, David K. Winder, Judge, holding plaintiff T.J. Smith and Nephew Limited's (Nephew) U.S. Patent Re. No. 31,887 ('887) not invalid or unenforceable, and non-willfully infringed by defendants Parke, Davis & Company (Parke, Davis), Acutek Adhesive Specialties, Inc. (Acutek), and Deseret Medical, Inc. (Deseret). The judgment initially enjoined defendants from continuing infringement, but the court vacated the injunction on defendants' motion. Nephew, though it prevailed, was not awarded its attorney fees because the court found the case was not "exceptional" under 35 USC 285. We affirm-in-part, reverse-in-part, vacate-in-part, and remand.
 
 OPINION
 A. Reissue narrowed claim
 
 2
 The district court erred in holding that claim 12 of the '887 Reissue and claim 15 of the original Hodgson patent are "identical" within the meaning of 35 USC 252. Claim 15 of the original patent, which there depended from claim 12, in the reissue was cancelled and its limitation having "thermoplastic polyurethane film" as the backing material was written into claim 12. However, two additional amendments were also made in the reissue to claim 12. First, the open-ended transitional word "comprises" of claim 15 was not carried over to claim 12: it was replaced with the more limited transitional phrase "which is." Second, the word "unreinforced" was added to further define the backing material. Reissue claim 12 thus defines a backing material "which is an unreinforced thermoplastic polyurethane film" in contrast to the originally claimed backing material which "comprise[d] a thermoplastic polyurethane film." (Our emphasis.) The open-ended connotation of "comprises" in patent law has long been recognized. It has become a term of art. In re Baxter, 656 F.2d 679, 686, 210 USPQ 795, 802 (CCPA 1981); Parmalee Pharmaceutical Co. v. Zink, 285 F.2d 465, 469, 128 USPQ 271, 275 (8th Cir.1961). On the other hand, the expression "which is" clearly is more restrictive.
 
 
 3
 Notwithstanding the amendments incorporated in reissue claim 12 discussed above, we do not consider "an unreinforced thermoplastic polyurethane film" to be a limitation to a film of 100% pure polyurethane. A polyurethane film may contain some things other than polyurethane such as, in particular, the small amount of microtalc defendants allege to be present in their products. As for their contention that the microtalc is in fact a "reinforcement," within the meaning of claim 12, we agree with the trial court's holding that it does not avoid infringement and with Nephew's position that it was not proved to be a reinforcement, even if it has the effect of stiffening the film somewhat.
 
 
 4
 Also, with respect to the "unreinforced" limitation, we state, because defendants put so much emphasis on it, that we do not regard the Mylar backing on which their product is delivered to the user as "reinforcement" within the meaning of the claim because it is discarded in use. On this point we agree with the trial court.
 
 
 5
 At least the amendment to add the "unreinforced" limitation was made to avoid the Waldman reference which, in the examiner's view, rendered original claim 15 invalid, either alone or in combination with other references. The prosecution history makes this clear. Indeed, the board relied on both of these limiting amendments in reversing the Sec. 102 rejection based on Waldman. Accordingly, the amendments cannot be characterized as mere "clarifications" to make specific what was always implicit or inherent; these changes were substantive. Cf. Seattle Box Co. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 828, 221 USPQ 568, 575 (Fed.Cir.1984).
 
 
 6
 Nephew's expert testified that the amendments were inconsequential, but claim construction is a legal question subject to plenary review, Corning Glass Works v. Sumitomo Electric U.S.A., Inc., --- F.2d ----, ----, 9 USPQ2d 1962, 1965 (Fed.Cir.1989), and we hold the expert and the court were mistaken. The court's holding that reissue claim 12 is identical to original claim 15 within the meaning of Sec. 252 is reversed.
 
 
 7
 This does not necessarily mean defendants are entitled to "intervening rights" within the meaning of the second paragraph of Sec. 252. That paragraph addresses the rights of a defendant after a patent is reissued. The district court held that defendants were not entitled to intervening rights, and properly so. Defendants have not persuaded us otherwise. The only effect of our holding is that, pursuant to the first paragraph of Sec. 252, defendants may not be held liable for acts occurring before the date of the reissue, May 14, 1985.
 
 B. Willfulness
 
 8
 The district court erred in finding that defendants' infringement of the '887 Reissue was not willful. It is undisputed that defendants had notice of the original patent and the '887 Reissue. Therefore, they had an affirmative duty to exercise due care with respect to Nephew's rights. See Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc., 862 F.2d 1564, 1573-79, 9 USPQ2d 1273, 1282-87 (Fed.Cir.1988); Avia Group International, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1566, 7 USPQ2d 1548, 1555 (Fed.Cir.1988). The record establishes that defendants breached that duty.
 
 
 9
 The common thread running through the court's subsidiary findings and its ultimate finding of non-willful infringement is that, in spite of notice, defendants' infringement should not be deemed willful because "Ensure-It," the accused product, was placed on the market before the '887 Reissue patent issued. That is not a correct view of the law. In Shiley, Inc. v. Bentley Laboratories, Inc., 794 F.2d 1561, 1568, 230 USPQ 112, 115 (Fed.Cir.1986), cert. denied, 479 U.S. 1087 (1987), Bentley argued its infringement was non-willful as a matter of law since it began to market its infringing device a month before any of Shiley's patents issued. This court rejected that argument and upheld the jury's verdict and the court's independent finding of willful infringement. A finding of willful infringement on similar facts was also sustained in Pacific Furniture Mfg. Co. v. Preview Furniture Corp., 800 F.2d 1111, 231 USPQ 67 (Fed.Cir.1986), and, more recently, in the Avia Group case, supra. These cases establish that the timing of a product's introduction into the market is not dispositive on the question of willfulness.
 
 
 10
 What is dispositive is whether the defendant exercised due care after having notice of the patent. Defendants monitored the progress of Nephew's reissue application in the Patent and Trademark Office. The reissue claims were allowed in July 1984. Defendants had notice from that time on that a reissue patent would issue, which it did ten months later on May 14, 1985.
 
 
 11
 Turning to the evidence of due care, nothing in the court's findings or the record indicates that defendants believed in good faith that they did not infringe or that they took any steps to avoid infringing. The court's Finding of Fact 41 was relied on to support its non-willfulness holding. In pertinent part it states:
 
 
 12
 During 1981 Acutek sent a sample of Ensure-It to Smith and Nephew for its evaluation. In January of 1982 Smith and Nephew replied and advised Acutek that the only similarity it found between Ensure-It and OpSite was that it was a polyurethane film but not of the right type. Smith and Nephew further advised that in all other respects the film was different from OpSite and not one that Smith and Nephew wished to use in the marketplace. Further, this communication from Smith and Nephew made no claims of infringement and voiced no objections to Acutek's plans to market the product.
 
 
 13
 We find it non-supportive, if not misleading, because of these undisputed facts: (1) Nephew was contacted not by Acutek but by an attorney, Gregory B. Wood, who did not reveal that he was representing Acutek; (2) Wood did not identify the "samples" as Ensure-It;* (3) The samples were sent for "evaluation" pursuant to an unsolicited offer "to produce the Op-site product for Smith & Nephew in this country," i.e., the United States. We also note that the finding that Nephew "voiced no objections to Acutek's plans to market the product" is clearly erroneous. Wood's letters set forth no such "plans."
 
 
 14
 The court did not find on these facts, nor could it have found, that defendants reasonably relied on this exchange to decide their product did not infringe. Defendants do not so argue. Their only assertion is that they "reasonably relied upon Smith & Nephew's letter to support their view that Smith & Nephew was not concerned about infringement." This does not bear on whether defendants formed a reasonable belief that they did not infringe, and, in any event, it is attorney argument unsupported in the record.
 
 The court also found:
 
 15
 Just prior to reissue defendants learned from Gila River who supplied the backing film used in Ensure-It that the backing film resulted in the formation of microscopic holes and, in effect, thereby advised defendants that the product would not infringe.
 
 
 16
 On the entire record, this finding does not support the court's ultimate finding of non-willfulness. Thomas F. Gardeski of Gila River wrote Acutek on May 7, 1985, that "the chemical composition and manufacturing method for producing our GI1004 medical grade polyurethane would lead to a pin hole characteristic in the film. This can be confirmed by microscopic examination, preferably with a Scanning Electron Microscope (SEM)." Mr. Gardeski testified, however, that he had never seen even a single hole in the film Gila River supplied to Acutek. When Acutek hired Dr. Kumar of Scanning Electron Analysis Laboratories to examine the film using SEM, he reported and testified that while he found "pinholes" on the surface of the film, it was not possible using SEM to determine whether those surface imperfections passed through the film. Defendants' statement that "Deseret put on substantial proof at trial of the existence of holes, and remains convinced to this day that holes exist," is, again, attorney argument unsupported in the record.
 
 
 17
 Furthermore, there is insufficient evidence to show that defendants formed a good faith belief, at any time, that the '887 Reissue was invalid or unenforceable. In this regard, Parke, Davis obtained a written opinion that Hodgson's original patent was invalid in view of two United Shoe patents. The district court apparently accepted this opinion as competent. We need not state our view on that point because the United Shoe patents were fully considered in the reissue proceeding. Given that fact, this early opinion, standing alone, cannot serve as the basis for a good faith belief that the '887 Reissue was invalid. Cf. Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1577, 220 USPQ 490, 492 (Fed.Cir.1983). Finally, Parke, Davis apparently obtained legal advice as to the import of the reissue proceedings. This does not help defendants, however, because they refused, on the ground of attorney-client privilege, to disclose what that advice was.
 
 
 18
 We are convinced on the record before us that defendants breached their duty of due care. Defendants, with full knowledge that the '887 Reissue would issue, simply continued infringing. We are left with a definite and firm conviction that the district court erred when it found that defendants' infringement was not willful. The court's finding that the infringement was not willful is reversed.
 
 
 19
 The case is remanded for the court to determine whether an award of increased damages is warranted. Cf. CPG Products Corp. v. Pegasus Luggage, Inc., 776 F.2d 1007, 1015, 227 USPQ 497, 502 (Fed.Cir.1985).
 
 C. Section 285 question
 
 20
 The district court found that this was not an "exceptional" case within the meaning of 35 USC 285. In view of our holding that defendants' infringement was willful, we vacate the district court's decision that this case was not "exceptional" and remand for the court to reconsider its decision on this point. Cf. Fromson v. Western Litho Plate and Supply Co., 853 F.2d 1568, 1572-73, 7 USPQ2d 1606, 1610-11 (Fed.Cir.1988); S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986).
 
 D. Injunction moot
 
 21
 Whether the court erred in vacating the injunction has been mooted by the expiration of the '887 Reissue patent during the pendency of this appeal.
 
 E. Other issues
 
 22
 We have considered numerous arguments on other points but, finding no reversible error with respect thereto, we affirm the district court's decision in all other respects.
 
 Costs
 
 23
 Each party to bear its own costs.
 
 
 
 *
 Defendants have not identified any record support for the finding that the samples were in fact Ensure-It. The correctness of this finding, however, is not important to our decision